**Albert PEREZ, Petitioner–Appellee,**

**v.**

**Frank IRWIN, Superintendent, Wende Correctional Facility, Defendant– Appellant.**

**No. 580, Docket 91–2356.**

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1991.

Decided March 11, 1992.

Amy Appelbaum, Asst. Dist. Atty., Kings County, Brooklyn, N.Y. (Charles J. Hynes, Dist. Atty., Jay M. Cohen, Asst. Dist. Atty., of counsel), for defendant-appellant.

B. Alan Seidler, Nyack, N.Y., for petitioner-appellee.

Before: FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Frank Irvin, Superintendent of the Wende Correctional Facility, appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, J.) granting Albert Perez's petition for a writ of *habeas corpus*. 766 F.Supp. 90. Perez's petition challenged a 1976 judgment of the Supreme Court of the State of New York, Kings County, convicting him, after a jury trial, of murder in the second degree and burglary in the second degree. Judge Weinstein found the state trial court's charge on reasonable doubt violated petitioner's constitutional right to a fair trial. In affirming, we observe that judges' consistent use of the same terminology often is criticized as dull legalese; but in some circumstances the plodding repetition of approved language is the better course to follow. This case illustrates the unfortunate consequences that occur when in giving its charge a trial court attempts to improve on language that is tried and true.

## I

On July 22, 1975 Sayde Koplow, a 78-year-old woman, was strangled to death in her Brooklyn, New York apartment. Ten days later Perez was arrested and charged with committing this murder. At the time of his arrest and after being given his *Miranda* warnings, petitioner asserted he had never been inside any house on the block where the crime occurred and had not been in that vicinity at any time immediately prior to the victim's death.

Perez's first trial on the murder charge in June 1976 ended in a mistrial when the jury was unable to agree on a verdict. The evidence presented at petitioner's retrial was similar to that presented at the first trial and included the testimony of two of the victim's neighbors. One neighbor identified petitioner as the person she had seen looking into a neighbor's window at approximately 6:00 a.m. on the morning of the crime. The other neighbor identified him as the man she saw coming out of the victim's home at approximately 8:45 on the same morning. The medical evidence established that Sayde Koplow had been murdered between 7:00 a.m. and 9:00 a.m. on the morning of July 22. Three of Perez's fingerprints were found inside the house at the scene of the crime. The defense presented no witnesses.

During summation defense counsel admitted that petitioner had in fact been in the victim's home, but asserted he intended to rob her, and that his client was not guilty of her murder. Counsel sought to explain his client's contrary statements to the police as the result of fear, rather than as evidence of his consciousness of guilt. Counsel concluded his summation by conceding Perez was in Koplow's residence to steal "but I submit to you that you shouldn't jump from that to believe to a moral certainty that my client committed murder, because there's insufficient evidence."

At the pre-charge conference defense counsel requested the trial judge instruct the jury on the concept of reasonable doubt as "I have used it in my summation, that is, that another term for beyond a reasonable doubt is to a moral certainty." The trial court replied:

I always use it. I always say, "If you should find that on such and such a date, this and that happened, you are justified in bringing in a verdict of guilty. If, however, you entertain a reasonable doubt, that is a doubt to a moral certainty to the guilt of the defendant, you must find the defendant not guilty."

Defense counsel acceded to the trial court's misstatement of the law.

During its charge to the jury the trial court defined the elements constituting the crime of felony murder, and told the jury that it could find the defendant guilty of murder in the second degree if those elements were proved. It went on

> On the other hand, if you should entertain a reasonable doubt, that is *a doubt to a moral certainty* of the guilt of the defendant or if any of the elements that I have listed to you are missing, then you would be—you must find the defendant not guilty and acquit him of that charge.

After stating the elements constituting the crime of burglary in the second degree, and instructing that it must find the defendant guilty of that crime if those elements were proved, the trial court continued

> If, on the other hand you should entertain a reasonable doubt, that is *a doubt to a moral certainty* to the guilt of the defendant or any of the elements as I have just set them forth to you, are missing, then you must find the defendant not guilty and acquit him of that charge.

Again describing the elements constituting the crime of burglary in the second degree, the trial judge repeated

> And, of course, on the other hand, if you should find or entertain a reasonable doubt, *that is to say a doubt to a moral certainty* of the guilt of the defendant— all of those elements I mentioned are missing, then you must find the defendant not guilty of burglary in the second degree.

In discussing burglary in the third degree with the jury, the trial judge similarly explained that if it entertained "a doubt to a moral certainty" of defendant's guilt, it must acquit him.

Defense counsel excepted to this instruction defining reasonable doubt as a doubt to a moral certainty, stating "I think that perhaps Your Honor, the jurors might think when you use the phrase doubt to a moral certainty that the doubt they must have before they can acquit my client must be to a moral certainty ... I think that one

or more of the jurors might be reasonably certain that they must have a moral certainty to the doubt." The trial court refused to give any curative instructions, and the jury retired to deliberate.

It returned with a verdict finding petitioner guilty of murder in the second degree and burglary in the second degree. Judgment was entered on July 27, 1976 sentencing Perez to 25 years to life for the murder conviction and five to 15 years for the burglary conviction, both sentences running concurrently. This judgment was affirmed, without opinion, *People v. Perez*, 59 A.D.2d 656, 398 N.Y.S.2d 351 (2nd Dept. 1977), and petitioner's *pro se* application for leave to appeal to the New York Court of Appeals was denied.

On October 26, 1990 Perez filed a *pro se* application for a writ of *habeas corpus* in the Eastern District of New York, claiming that his post-arrest statement had been improperly admitted at trial, his trial counsel had been ineffective, and he had been unable adequately to comprehend the proceedings against him. On January 23, 1991 the district court assigned B. Alan Seidler, Esq. to represent defendant in his *habeas corpus* proceeding. Counsel filed a supplemental petition alleging, *inter alia*, that the trial court's reasonable doubt charge deprived defendant of a fair trial. Specifically, counsel argued that the trial court had improperly characterized a reasonable doubt as "a doubt to a moral certainty of the guilt of the defendant."

In a memorandum and order dated June 27, 1991 Judge Weinstein granted the writ stating that "[t]o acquit, the jury was mistakenly told, there must be a doubt rising to a level of 'a moral certainty,' rather than simply a reasonable doubt as to the defendant's guilt," in violation of petitioner's due process rights. The district court held the error prejudicial in light of the jury's failure to convict on the same evidence at petitioner's first trial.

## II

Due Process requires that an accused not be convicted "except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Reading the trial court's charge to the jury as a whole, as we must, *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), the quoted definition of reasonable doubt as doubt to "a moral certainty" diluted the government's burden of proving Perez's guilt beyond a reasonable doubt to such an extent as to violate his rights under the Due Process Clause of the Fourteenth Amendment.

■ In his general instructions on trial principles, the trial judge correctly defined reasonable doubt. Yet, in the course of the court's specific instructions on the elements of the charged offenses the court repeatedly defined reasonable doubt as "doubt to a moral certainty". This is a plain error of law. *See United States v. Byrd,* 352 F.2d 570, 575 (2d Cir.1965). When used in a jury instruction—and as used by defense counsel in summation—the term "moral certainty" as sometimes used by trial courts, especially in an earlier day, emphasizes the heavy burden on the prosecution, by suggesting that the state must convince the jury of a defendant's *guilt* to a "moral certainty." Even used in this fashion, the expression is ill-advised because of its potential for effecting an impermissible reduction of the prosecution's burden of proof. The concern is that the use of these words might lead a jury to reach a verdict based on feelings rather than on the facts of the case before it. *See, e.g., United States v. Magnano,* 543 F.2d 431, 436 (2d Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 1101, 51 L.Ed.2d 536 (1977); *United States v. Acarino,* 408 F.2d 512, 517 (2d Cir.), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969); *United States v. Drake,* 673 F.2d 15, 21 (1st Cir.1982); *United States v. Indorato,* 628 F.2d 711, 720–21 (1st Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980); *United States v. Ariza–Ibarra,* 605 F.2d 1216, 1228 (1st Cir.1979), *appeal after remand,* 651 F.2d 2 *and cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).

In the instant case the phrase "moral certainty" was used not to emphasize the prosecution's burden of proof, but rather incorrectly to define the degree of doubt necessary to entitle petitioner to an acquittal. By using the expression in this fashion the trial court placed the burden of the moral certainty requirement on the defendant rather than on the prosecution. As a consequence, in order for the jury to acquit the defendant, he was required to establish *doubt* of his guilt to the level of a "moral certainty", clearly contrary to the teachings of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. We have previously disapproved phraseologies that employ the term "moral certainty" as creating "more confusion than light," *see Byrd,* 352 F.2d at 575. The Supreme Court in *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), *reh'g denied,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955), defined reasonable doubt as a doubt that would cause a person to hesitate to act in matters of importance in his own life. We view this definition as the preferable way of expressing the notion of reasonable doubt. *Magnano,* 543 F.2d at 436.

■ Appellant nonetheless contends that, read as a whole, the charge properly conveyed the substance of the concept of reasonable doubt. We agree that a charge read as a whole will often overcome the lapses or misstatements of the charging court. But not in this case. Here the impermissible definition of reasonable doubt was repeated three times, in conjunction with the instruction on the elements of each of the crimes charged. We cannot conceive of how other language in the charge could have fairly conveyed the concept of reasonable doubt to the jury when the terms "reasonable doubt" and "doubt to a moral certainty" were so frequently used in tandem.

■ Further, appellant's contention that defense counsel invited this error is not persuasive. Defense counsel sought to have the "moral certainty" language used in the court's charge as he had used it in

his summation, that is, as the degree to which the prosecution had to establish petitioner's *guilt*. It is true that at the precharge conference the trial judge gave his incorrect instruction, and counsel inadvertently acquiesced. But counsel, citing the correct reason, objected when the charge was given. This is not a case where defense counsel invited an error now challenged on appeal.

### III

 We must consider finally whether the incorrect charge could be viewed as harmless error. The Supreme Court, in *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), noted that its prior decisions "have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," including those constitutional protections assuring the right to counsel and to impartial tribunals. The right of a defendant not to be convicted except upon proof beyond a reasonable doubt as to his guilt is so fundamental that it is difficult to fathom how an instruction seriously misinforming the jury as to the reasonable doubt standard may ever be deemed harmless. *See Jackson v. Virginia*, 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2790 n. 14, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) (suggesting that the failure to instruct jury on reasonable doubt standard cannot be harmless); *Lanigan v. Maloney*, 853 F.2d 40, 48–49 (1st Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

We need not decide that issue because, even viewing this appeal under a harmless error analysis, petitioner's conviction cannot stand. Because reasonable doubt was improperly defined to the jury three times during the trial court's charge, it cannot be said beyond a reasonable doubt that the jury's verdict was not affected by this erroneous instruction. *See Rose v. Clark*, 478 U.S. 570, 583, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986); *Chapman*, 386 U.S. at

24, 87 S.Ct. at 828. Hence, the jury may have convicted petitioner based on a standard of proof below that mandated by the Constitution.

Accordingly, the order of the district court granting petitioner a writ of *habeas corpus* must be affirmed.