**William A. MORLEY, Petitioner,**

v.

**Donald B. STENBERG, Attorney General of the State of Nebraska, Respondent.**

No. 4:CV91–3370.

United States District Court, D. Nebraska.

Aug. 11, 1993.

Dalton W. Tietjen, Tietjen, Simon Law Firm, Omaha, NE, for petitioner.

Donald B. Stenberg, Donald A. Kohtz, Atty. Gen., Lincoln, NE, for respondent.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the Magistrate Judge's Report and Recommendation (filing 51)[1] and the objections to such Report and Recommendation (filing 54) filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

---

1. The legal analysis which is the basis for the Magistrate Judge's Recommendation that plaintiff is entitled to habeas relief is found in the May 11, 1993 Memorandum and Order of Magistrate Judge David L. Piester, filing 48.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the report and recommendation to which objections have been made. I find that the Report and Recommendation should be adopted. Inasmuch as Judge Piester has fully, carefully and correctly found the facts and applied the law I need only state that the Petitioner is entitled to habeas relief for the reasons that (a) the challenged jury instruction regarding the definition of "reasonable doubt" misstated the degree of certainty required to convict, and the degree of doubt required to acquit, and (b) further, that it is reasonably likely that the jury applied the instruction in a way that violated the Constitution by lowering the state's burden of proof thereby depriving Petitioner of his right to a jury verdict consistent with the Sixth Amendment to the Constitution.

IT IS ORDERED:

1. the Magistrate Judge's Report and Recommendation (filing 51 considered together with filing 48) is adopted and Respondent's objection is denied (filing 54); and

2. a separate judgment shall issue providing that Petitioner's petition for habeas corpus relief is granted and the writ will issue unless the Petitioner is granted a new trial within sixty days of the date of the entry of judgment.

### JUDGMENT

IT IS ORDERED that judgment is hereby entered in favor of Petitioner and against Respondent providing that Petitioner's petition for habeas corpus relief is granted and the writ will issue unless the Petitioner is granted a new trial within sixty days.

### MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Before the court for consideration is the writ of habeas corpus filed by William A. Morley. For reasons discussed more fully below, the record provided thus far does not permit me to determine whether petitioner is entitled to habeas relief. Therefore, I shall grant respondent time in which to appropriately supplement the record, after which time the matter will be deemed submitted.

### I. *Background*

Under attack is petitioner's conviction for attempted burglary, following which he was sentenced to a term of six months in jail.[1] Petitioner appealed his conviction to the Nebraska Supreme Court arguing, *inter alia,* that the jury instruction defining "reasonable doubt" had the effect of impermissibly lowering the government's burden of proof, thereby violating his due process rights as announced by the Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam). The Nebraska Supreme Court distinguished the reasonable doubt instruction used at petitioner's trial from the reasonable doubt instruction found objectionable in *Cage,* and concluded the instruction did not offend due process. *See State v. Morley,* 239 Neb. 141, 152–156, 474 N.W.2d 660 (1991). Petitioner's conviction was affirmed, *id.* at 157, 474 N.W.2d 660, and his motion for rehearing denied.

Petitioner then filed the present habeas action. He once again relies upon *Cage v. Louisiana,* and challenges his conviction on grounds the reasonable doubt jury instruction used in his criminal trial had the effect of allowing the jury to find him guilty based upon a degree of proof below that which is required by the Due Process Clause. Having concluded petitioner properly exhausted this claim by presenting it to the Nebraska Supreme Court on direct appeal, *see Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), I proceed to the merits of his claim.[2]

---

1. Although petitioner began serving his jail sentence on December 23, 1991, he was released on bond by this court on December 31, 1991, pending disposition of his habeas petition in this court. *See* filing 7.

2. Even if *Cage* announced a "new rule"—an issue which I neither examine nor decide—I need not consider issues of retroactivity because the United States Supreme Court decided *Cage v. Louisiana* while petitioner's case was on direct appeal. *See Griffeth v. Kentucky,* 479 U.S. 314, 320–328, 107 S.Ct. 708, 711–716, 93 L.Ed.2d 649 (1987) (new rules are to be applied to criminal cases on direct review).

## II. *Reasonable Doubt Instruction*

In 1970, the United States Supreme Court made clear that the requirement of "proof beyond a reasonable doubt" plays a vital role in our scheme of criminal procedure. As the Court explained:

Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the fact finder of his guilt. To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.... Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.... Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368 (1970) (internal quotation marks and citations omitted).

Twenty years later, the Supreme Court reaffirmed the importance of "proof beyond a reasonable doubt" in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In *Cage*, the Court was called upon to consider whether a Louisiana jury instruction defining reasonable doubt had the effect of impermissibly allowing the jury to find guilt based upon a lower degree of proof than required by the Due Process Clause. The challenged instruction read as follows:

If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a *grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an *actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*.

*Cage v. Louisiana*, 498 U.S. at 40, 111 S.Ct. at 329 (emphasis supplied). Although the Court pointed out that some portions of the Louisiana instruction accurately set forth the degree of certainty needed to convict, three phrases were found particularly troublesome and served to render the entire instruction unconstitutional. The Court explained:

The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage v. Louisiana*, 498 U.S. at 41, 111 S.Ct. at 329–30.

Thus, in order to preserve the vital role played by the reasonable doubt standard, *see Winship*, 397 U.S. at 364, 90 S.Ct. at 1072, the Supreme Court has condemned language in jury instructions which suggests to a jury that it may convict on anything less than a finding of guilt beyond a reasonable doubt. As *Cage* made clear, reasonable doubt instructions should not contain language that suggests a higher degree of doubt than required for acquittal under the reasonable doubt standard, and should not contain language that allows a finding of guilt based upon a lower degree of certainty than required by the Due Process Clause. *See Cage* at 41, 111 S.Ct. at 329.

Analysis of a jury instruction under the Due Process Clause essentially requires two separate inquiries. First, considering the instructions as a whole and giving words their common meaning, the court must determine whether the reasonable doubt instruction contains language which adequately conveys the standard of proof required for criminal conviction under the Due Process Clause. That is, the court must examine the challenged instruction to determine whether it contains language which suggests an improperly high degree of doubt for acquittal, or an improperly low degree of certainty for conviction. *Cage* at 41, 111 S.Ct. at 329. If the instruction contains improper language, the court must next determine whether there is a "reasonable likelihood" the jury applied the instruction in a way that violated the constitution. *See Estelle v. McGuire*, —— U.S. ——, —— & n. 4, 112 S.Ct. 475, 482 & n. 4, 116 L.Ed.2d 385 (1991).[3]

The reasonable doubt instruction challenged by this petitioner reads as follows:

> "Reasonable doubt" is such doubt as would cause a reasonable and prudent man, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of the all the evidence, to have an abiding conviction, to a *moral certainty*, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond reasonable doubt and yet be fully aware that possibly you may be mistaken. The jury may find an accused guilty upon the *strong probabilities* of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts and circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

Filing 32, Jury Instruction 6 (emphasis supplied).[4]

A. *Does the language of the challenged instruction accurately depict the standard of proof beyond a reasonable doubt?*

I first consider whether the reasonable doubt instruction challenged by petitioner

---

**3.** In *Estelle v. McGuire*, the Supreme Court clarified that the proper standard of review for jury instructions is the "reasonable likelihood" standard set out by the Court in *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). The Court in *Estelle* acknowledged that language in *Cage* and *Yates v. Evatt*, —— U.S. ——, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)—two cases that followed the *Boyde* decision—might be read as endorsing a slightly different standard of review, but clarified that the proper standard of review for jury instructions is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, —— U.S. at ——, 112 S.Ct. at 482 (quoting *Boyde v. California*, 494 U.S. at 380, 110 S.Ct. at 1198).

**4.** I note the challenged version of the reasonable doubt instruction has since been changed, and the instruction defining reasonable doubt now suggested for use in the Nebraska courts reads as follows:

> A reasonable doubt is one based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt is proof so convincing that you would rely and act upon it without hesitation in the more serious and important transactions of life. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

NJI2d Crim. 2.0 (1992).

contains language which accurately states the standard of proof required for criminal conviction under the Due Process Clause. Considering the instructions as a whole and giving words their common meaning, I find three terms troublesome: (1) "actual and substantial doubt;" (2) "moral certainty;" and (3) "strong probabilities."

### 1. "Actual and Substantial Doubt"

■ Petitioner points out that, like the instruction found unconstitutional in *Cage*, the instruction challenged in this case equates reasonable doubt with "actual and substantial doubt."[5] In *Cage*, a unanimous Supreme Court found it obvious that the term "substantial," as it is commonly understood, suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard. *Cage* at 41, 111 S.Ct. at 329. The Eighth Circuit court expressed similar disapproval of "substantial doubt" language in *United States v. Atkins*, 487 F.2d 257, 260 (8th Cir.1973), where the court illustrated the difference between "substantial doubt" and "reasonable doubt" as follows:

"Reasonable" and "substantial" are not synonymous, as can be seen by referring to any of the standard dictionaries. The point was well put by counsel in argument recently where he pointed out that if one had to undergo a serious operation and were querying the doctor as to the prospects for a successful outcome, how differently the person would feel if the doctor told him there was only a reasonable chance of success as opposed to being told there was a substantial chance of success.

*Atkins*, 487 F.2d at 260 n. 2 (quoting *State v. Davis*, 482 S.W.2d 486, 490 (Mo.1972) (Seiler, J., concurring)).

I therefore conclude that equating reasonable doubt with "actual and substantial" doubt is improper and potentially misleading in that it overstates the degree of doubt required for acquittal under the reasonable doubt standard. *See Cage, supra; Adams v. Aiken*, 965 F.2d 1306 (4th Cir.1992) (finding

jury instruction which equated reasonable doubt with "substantial doubt" to be violative of due process under *Cage*); *Monk v. Zelez*, 901 F.2d 885, 889 (10th Cir.1990) (granting habeas relief where jury instruction defined reasonable doubt as "substantial, honest, conscientious doubt," noting that appellate courts "have uniformly criticized and rejected jury instructions equating reasonable doubt with substantial doubt."); *United States v. Wright*, 542 F.2d 975, 988 (7th Cir.1976) (cautioning that any court using substantial doubt language in a jury instruction "can reasonably expect a reversal"), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977), *overruled on other grounds, United States v. Hollinger*, 553 F.2d 535 (7th Cir.1977); *United States v. Atkins*, 487 F.2d at 260 (concluding "substantial doubt" is not synonymous with "reasonable doubt" and disapproving of instructions equating the two); *United States v. Alvero*, 470 F.2d 981 (5th Cir.1972) (granting new trial where jury instruction defined reasonable doubt as "a very substantial doubt"). *See also Taylor v. Kentucky*, 436 U.S. 478, 488, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978) (criticizing jury instructions that define reasonable doubt as substantial doubt).

Respondent acknowledges that both the Nebraska instruction and the *Cage* instruction define reasonable doubt as "actual and substantial" doubt; however, respondent argues that because the Nebraska instruction does not also equate reasonable doubt with "grave uncertainty," it is distinguishable from *Cage* and therefore not subject to challenge under the Due Process Clause. To support this proposition respondent relies upon the decision of the Nebraska Supreme Court on petitioner's direct appeal. *See State v. Morley, supra.*

In *State v. Morley*, the Nebraska Supreme Court concluded that the challenged instruction on reasonable doubt did not lessen the state's burden of proof and therefore did not run afoul of the Due Process Clause. In distinguishing the challenged instruction

---

**5.** The exact language of the Louisiana instruction considered in *Cage* was "actual substantial

doubt." *Cage,* 498 U.S. at 40, 111 S.Ct. at 329.

from the instruction considered in *Cage*, the court reasoned:

> It is true that both the *Cage* instruction and the questioned instruction tell the jury that, in effect, a reasonable doubt is an actual and substantial one. But while the *Cage* instruction also equates reasonable doubt with a grave one, the questioned instruction does not.

*State v. Morley*, 239 Neb. at 155, 474 N.W.2d 660.

■ I do not read the *Cage* opinion as holding that courts must engage in a term-by-term comparison between the language found improper in *Cage* and the language in the challenged instruction. Nor do I read the opinion as holding that a jury instruction will violate due process only if it contains the precise terminology considered improper by the Court in *Cage* ("substantial doubt," "grave uncertainty," and "moral certainty"). Contrary to respondent's assertion, the relevant inquiry under the Due Process Clause is not whether the challenged phrase parrots the precise language found improper in *Cage*, but whether the challenged language tends to overstate the degree of doubt required to acquit or understate the degree of certainty required to convict.[6] Indeed, it would be absurd to suggest that only the language considered by the Court in *Cage* is capable of improperly conveying the degree of proof required for criminal conviction under the Due Process Clause.[7]

The approach taken by the Nebraska Supreme Court in *Morley* when considering the challenged instruction under the Due Process Clause focused on semantic differences between the challenged instruction and the instruction considered in *Cage*. I must respectfully disagree with that approach. The fact that the wording of a particular instruction is distinguishable from the *Cage* instruc-

tion does not necessarily mean the thought conveyed is also different, nor does it mean the instruction comports with due process. When determining whether the language contained in the challenged instruction offends due process by suggesting an improperly high degree of doubt for acquittal, or an improperly low degree of certainty for conviction, the similarity of language may simplify the analysis, but dissimilar language by no means ends the inquiry.

In short, a jury instruction which equates reasonable doubt with "substantial doubt" suggests a higher degree of doubt than required by due process; such language is no less misleading or improper simply because the instruction does not also mention "grave uncertainty." *See Adams v. Aiken*, 965 F.2d at 1311 (jury instruction which equated reasonable doubt with "substantial doubt" but did not also use the term "grave uncertainty" found violative of due process under *Cage*).

### 2. "Moral Certainty"

■ Petitioner also points out that, like the instruction considered in *Cage*, the instruction in this case makes reference to "moral certainty" of the defendant's guilt. In the challenged instruction the term "moral certainty" is used in the following context:

> [Reasonable doubt] is such doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a *moral certainty*, of the guilt of the accused.

Filing 32, Jury Instruction 6 (emphasis supplied). Thus, the Nebraska charge instructs the jury that "reasonable doubt" is doubt that prevents them from being morally certain of the defendant's guilt. This instruction suggests to jurors that they may convict a defendant if they are morally certain of his or her guilt. As discussed below, equating

---

**6.** Of course, in the event an instruction is found to contain language which improperly conveys the burden of proof, the court must go on to consider whether there is a reasonable likelihood the jury applied the instruction in a way that violated the constitution. *See Estelle v. McGuire*, ⸺ U.S. at ⸺ & n. 4, 112 S.Ct. at 475 & n. 4.

**7.** Furthermore, when the Supreme Court in *Cage* considered the common meaning of "substantial" and "grave" and concluded the words sug-

gested a higher degree of doubt than is required for acquittal under due process, there was no suggestion that such a conclusion was somehow based upon the fact that the two terms were combined in the same instruction. There is simply no indication the Court would have reached a different conclusion had the Louisiana instruction equated reasonable doubt with only "substantial doubt" or "grave uncertainty."

"moral certainty" of guilt with the requirement of proving guilt beyond a reasonable doubt suggests to jurors that they may find guilt based upon something other than the factual evidence, and upon something less than certainty beyond a reasonable doubt.

In *Cage*, the Supreme Court warned it is improper to equate guilt beyond a reasonable doubt with "moral certainty" of guilt, reasoning that to do so allows a juror to find a defendant guilty based upon "moral certainty" rather than upon "evidentiary certainty." *Cage*, 498 U.S. at 41, 111 S.Ct. at 329. The Court focused its brief discussion of this term on the likelihood that jurors would substitute the concept of "moral certainty" for the more concrete concept of "evidentiary certainty," and did not squarely address whether the term "moral certainty," as it is commonly understood, suggests a lower degree of factual certainty than required by due process to convict. *Cage* at 41, 111 S.Ct. at 329 ("When ['grave uncertainty' and 'actual substantial doubt'] are then considered with the reference to 'moral certainty' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree or proof below that required by the Due Process Clause.").

Regardless of whether the Supreme Court's conclusion was premised upon concern that jurors would substitute "moral certainty" for evidentiary certainty, or whether it was premised upon concern that "moral certainty" suggests a lower degree of certainty than is required under due process to convict, one thing is clear: The Supreme Court has held it is improper to equate "moral certainty" of guilt with the requirement of finding guilt beyond a reasonable doubt. Because that is exactly what the challenged Nebraska instruction does, I conclude that use of such terminology is improper and

potentially misleading.[8] *See Cage, supra. See also Lanigan v. Maloney*, 853 F.2d 40 (1st Cir.1988) (affirming habeas relief where instruction equated proof beyond a reasonable doubt with "moral certainty" and created significant risk that jurors could find guilt based on a lower standard of proof than required by due process), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *United States v. Drake*, 673 F.2d 15, 20 (1st Cir.1982) (strongly disapproving of jury instructions using "moral certainty" to define proof beyond a reasonable doubt due to concern that juries might feel justified in convicting on a feeling rather than on the factual evidence).

Respondent argues that, unlike the instruction in *Cage*, use of the term "moral certainty" in the Nebraska instruction is not improper. To support this argument, respondent once again relies upon the Nebraska Supreme Court's opinion in *Morley*, wherein the court stated the Louisiana and Nebraska instructions were distinguishable upon the following ground:

> Moreover, while a reasonable reading of the *Cage* instruction leads to the conclusion that an accused is to be convicted unless such doubt rises to the level of a moral certainty, the questioned instruction permits conviction only if the lack of such doubt is established to a moral certainty. In other words, under the *Cage* instruction a juror is to vote for conviction unless convinced to a moral certainty that there exists reasonable doubt, whereas under the questioned instruction a juror is to vote for acquittal unless convinced to a moral certainty that no reasonable doubt exists. Those two are very different instructions; indeed, one contradicts the other.

*Morley*, 239 Neb. at 155, 474 N.W.2d 660.

By relying upon the distinction set forth in *Morley*, respondent once again attempts to

**8.** Indeed, reference to a dictionary confirms that "moral certainty"—as it is commonly understood—is not synonymous with factual certainty, and reference to moral certainty tends to suggest that a finding of guilt can be based upon something other than the factual evidence. For instance, the American Heritage Desk Dictionary (1981) includes among its definitions of moral:

> "Based upon strong probability or conviction rather than actual evidence: *a moral certainty.*"

(Emphasis in original). Another popular dictionary includes among its definitions of moral:

> [V]irtual rather than actual, immediate or completely demonstrable ... a [moral] certainty that the prisoner is guilty....

Webster's Third New International Dictionary (unabridged).

avoid analyzing the challenged instruction under the Due Process Clause by focusing instead upon perceived differences between the wording of the two instructions. As explained earlier, the fact that a particular instruction is distinguishable from the *Cage* instruction does not necessarily mean the instruction comports with due process. Moreover, in this instance the distinction proposed by respondent is premised upon what is, in my view, a misreading of the Louisiana and Nebraska instructions and the Supreme Court's opinion in *Cage*.

Underlying respondent's distinction is the conclusion that the term "moral certainty" was used in the instructions to illustrate the degree of *doubt* required under the reason-

able doubt standard to acquit. Contrary to this conclusion, in my view neither the Louisiana instruction nor the Nebraska instruction utilize the term "moral certainty" to define the degree of *doubt* required to acquit; rather, both instructions use the term to define the degree of *certainty* required to convict.[9] In other words, the Louisiana and Nebraska instructions do not suggest that jurors must be morally certain of their reasonable doubt; rather, both instructions suggest that jurors must be morally certain of the defendant's guilt.[10]

It was this equation of "moral certainty" with finding guilt beyond a reasonable doubt that the Court found objectionable in *Cage*. *Cage*, 498 U.S. at 41, 111 S.Ct. at 329 (disap-

9. In other words, it appears the Nebraska Supreme Court interpreted the last sentence of the *Cage* instruction to mean: "What is required [to acquit] is not an absolute or mathematical certainty, but a moral certainty [of doubt]." Conversely, I interpret the last sentence to mean: "What is required [to convict] is not an absolute or mathematical certainty, but a moral certainty [of guilt]." *See also Cage*, 498 U.S. at 40, 111 S.Ct. at 329 (interpreting last sentence to require a moral certainty of guilt). This illustrates one of the difficulties resulting from attempts to explain the term "reasonable doubt" in a jury instruction. The instruction challenged by petitioner alternates, without warning, between trying to illustrate the degree of doubt required to acquit, and the degree of certainty needed to convict. It is not always clear whether the instruction is attempting to define "reasonable doubt," or "guilt beyond a reasonable doubt," and the confusion resulting from combining these two concepts—often in the same sentence—does not serve to properly illustrate either concept, and likely generates more confusion than clarity. As the United States Supreme Court noted more than a century ago: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1881). This appears to be particularly true when the same instruction attempts to define both the degree of doubt necessary to have "reasonable doubt" and the degree of certainty required to find guilt "beyond a reasonable doubt."

10. Contrary to respondent's assertion, I do not believe a reasonable juror reading the language of the challenged instruction would engage in the mental gymnastics required to interpret the instruction to mean they should acquit the defendant "unless convinced to a moral certainty that no reasonable doubt exists." Additionally, I find it hard to believe that any depth is added to the

concept of reasonable doubt by defining it as moral certainty that reasonable doubt either does or does not exist—this approach is the equivalent of instructing a juror that they have reasonable doubt when they are morally convinced they have reasonable doubt. Nevertheless, to the extent the challenged instruction could be read as requiring moral certainty of one's doubt, I note that use of the term in this context is also potentially misleading. *See Perez v. Irwin*, 963 F.2d 499 (2d Cir.1992) (holding that defining reasonable doubt as "doubt to a moral certainty" diluted the government's burden of proof by suggesting to the jury that to acquit, their doubt must rise to the level of moral certainty). The *Perez* court explained:

In his general instructions on trial principles, the trial judge correctly defined reasonable doubt. Yet, in the course of the court's specific instructions on the elements of the charged offenses the court repeatedly defined reasonable doubt as "doubt to a moral certainty." This is a plain error of law. *See United States v. Byrd*, 352 F.2d 570, 575 (2d Cir.1965).

*Perez* at 502. The court went on to note that even when used to define the necessary degree of *guilt*, use of the term "moral certainty" is ill advised:

When used in a jury instruction—and as used by defense counsel in summation—the term "moral certainty" as sometimes used by trial courts, especially in an earlier day, emphasizes the heavy burden on the prosecution, by suggesting that the state must convince the jury of a defendant's *guilt* to a "moral certainty." Even used in this fashion, the expression is ill advised because of its potential for effecting an impermissible reduction of the prosecution's burden of proof. The concern is that the use of these words might lead a jury to reach a verdict based on feelings rather than on the facts of the case before it. *Id.*

proving of language in the Louisiana instruction requiring " 'moral certainty' that the defendant was guilty."). Because the challenged instruction suggests that "moral certainty" of guilt is synonymous with guilt "beyond a reasonable doubt," I conclude the use of such terminology is improper and potentially misleading. *Cage, supra; Lanigan v. Maloney, supra; United States v. Drake, supra.*

3. "Strong Probabilities"

■■ I next consider the propriety of language in the challenged instruction which charges that:

> The jury may find an accused guilty upon the *strong probabilities* of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable.

Filing 32, Jury Instruction 6 (emphasis supplied). I begin by noting that although petitioner challenges the Nebraska instruction on grounds it had the effect of allowing the jury to convict him based upon a degree of proof below that required by due process, he does not specifically challenge the "strong probabilities" language. Nevertheless, this court is required to consider the instruction as a whole when determining whether it comports with due process, *Estelle v. McGuire,* —— U.S. at ——, 112 S.Ct. at 475; *Cage,* 498 U.S. at 41, 111 S.Ct. at 329; and in order to apply the proper standard of review I find it necessary to consider all language in the instruction which may tend to improperly convey the constitutional standard of guilt beyond a reasonable doubt.

*Cage* instructs that when determining whether language in a jury instruction accurately sets forth the proper standard of proof, terms are to be given their common meaning. *Id.,* 498 U.S. at 41, 111 S.Ct. at 329. The word "probability" brings to mind terms such as "chance," "possibility," "likeli-

hood" and "plausibility"—none of which appear to suggest the high level of certainty which is required to be convinced of a defendant's guilt "beyond a reasonable doubt." Furthermore, I doubt that adding the word "strong" before any of these terms adequately remedies the lack of conviction inherent in their meaning.

Reference to popular dictionaries confirms that the term "probability"—as it is commonly understood—signifies a degree of certainty much lower than that required under due process to convict. For instance, the American Heritage Dictionary, 5th ed. (1985), defines probability as "most probably; very likely." The same dictionary defines "probable" as "[r]elatively likely but not certain; plausible." Black's Law Dictionary defines probability as:

> Likelihood; appearance of reality or truth; reasonable ground of presumption; verisimilitude; consonance to reason. The likelihood of a proposition or hypothesis being true, from its conformity to reason or experience, or from superior evidence or arguments adduced in its favor. A condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it.

Black's Law Dictionary, 5th ed. (1979).[11] Perhaps even more illustrative of the common understanding of "probability" are some of the synonyms suggested in Webster's Collegiate Thesaurus (1976) for the term probable: "conceivable," "likely," "possible," "believable," "colorable," "credible" and "plausible." [12] All of these terms appear relatively weak in comparison to the high degree of conviction required for certainty "beyond a reasonable doubt." *See In re Winship,* 397 U.S. at 364, 109 S.Ct. at 1072 (concluding the government cannot adjudge one "guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certain-

---

**11.** Indeed, the last sentence of this definition illustrates that the term "probability" is perhaps more aptly suited to describe the burden of proof required in civil cases. As the Supreme Court noted in *In re Winship,* 397 U.S. at 363, 90 S.Ct. at 1072:

> [A] person accused of a crime ... would be at a severe disadvantage, a disadvantage amount-

ing to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.

**12.** Completing the list of synonyms are "earthly," "mortal," "rational," "reasonable," "apparent," "illusory," "ostensible," and "seeming."

ty."). Furthermore, placing the adjective "strong" in front of the term "probabilities" does not sufficiently alter the meaning of the term. While "strong" probabilities may denote somewhat more certainty than "probabilities" alone, even strong probability suggests a burden of proof lower than proof beyond a reasonable doubt.[13]

In *United States v. Merlos*, 984 F.2d 1239 (D.C.Cir.1993), the court considered a jury instruction which equated certainty beyond a reasonable doubt with "strong belief" of guilt. The instruction contained the following language:

> If based on your consideration of the evidence, you have a *strong belief* that the defendant is guilty of the crimes charged, it is your duty to find him guilty.

*Id.* at 1240 (emphasis in original). The court carefully analyzed the meaning of "strong belief" as it is commonly understood, and concluded that the term suggested a lower level of confidence than was required to be certain beyond a reasonable doubt of a defendant's guilt. After acknowledging that much of the challenged instruction was unobjectionable, the court went on to conclude that:

> On the key issue of the necessary level of certainty, however, there is nothing to offset the too-spacious character of "strong belief." While some jurors might equate strong belief with having an abiding conviction or being firmly convinced, we think that it is "reasonably lik[ely]" that a jury would understand the phrase more broadly. Under *McGuire* [—— U.S. ——, 112 S.Ct. 475] and *Boyde* [494 U.S. 370, 110 S.Ct. 1190], that condemns the charge.

*Id.* at 1242.

Like the language found objectionable in *Merlos*, the language used in the challenged instruction suggests a lower level of confidence than is required to be certain of a defendant's guilt beyond a reasonable doubt. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he

is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368. When a charge instructs a jury that they may find guilt based upon the "strong probabilities" of the case, the instruction does not properly impress upon the jury "the necessity of reaching a subjective state of certitude of the facts in issue." *Winship* at 364, 90 S.Ct. at 1072. I therefore conclude that the term "strong probabilities"—as it is commonly understood—suggests a degree of certainty lower than that required under due process to convict.

In the challenged instruction, however, use of the term "strong probabilities" is further qualified by the phrase "provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable." I do not see the qualifying language as limiting the jury's focus, for it merely throws them back into the original dilemma of determining "reasonable doubt" with all of its ambiguities discussed above. It appears the drafter recognized the need to narrow the breadth of "strong probabilities," but failed in the attempt to do so. Therefore, like the other terms directly challenged, this term, as used in this instruction, also carries the potential to mislead the jury as to the prosecution's burden.

B. *Is it reasonably likely the jury applied the challenged instruction in a way that violated the Constitution?*

■ Having determined that the challenged instruction contains certain language which suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard, and also contains language which suggests conviction may be based upon something less than proof of guilt beyond a reasonable doubt, I must now consider the instructions as a whole and determine whether there is a "reasonable likelihood" the jury applied the challenged instruction in a way that violated the constitution. *Estelle v. McGuire*, —— U.S. at ——, 112 S.Ct. at 482.

---

**13.** For example, if a mechanic told a driver there was a "strong probability" the car's brakes would work properly, the driver would likely feel much less confident driving down Pike's Peak than if the mechanic told the driver it was "certain beyond all reasonable doubt" that the car's brakes would function properly.

Concededly, such an exercise requires a good deal of speculation. There is no record of the jury's actual interpretation or interpretations of the challenged instruction, nor could there be. *See Neb.Rev.Stat.* § 27–606(2) (Reissue 1989).[14] Thus, the court is left to muse over whether a reasonable person serving on the jury could have been misguided by the instruction, and, if that possibility exists, to determine how "likely" it is the jury used an improper standard of proof in reaching its decision.

I begin by acknowledging that portions of the challenged instruction are unobjectionable.[15] However, the fact that portions of the instruction are unobjectionable does not necessarily render harmless those portions of the instruction that misstate the proper burden of proof. *See Cage,* 498 U.S. at 41, 111 S.Ct. at 329; *United States v. Merlos,* 984 F.2d at 1242. Therefore, I must determine whether, taking the instructions as a whole, it is reasonably likely the jury interpreted the instruction to allow a finding of guilt based upon proof below the standard required by due process.

Defining reasonable doubt as "substantial doubt," suggests a higher degree of doubt than is required for acquittal under due process, and nothing in the remainder of the challenged instruction, or in the accompanying instructions, serves to adequately offset the suggestion that reasonable doubt is synonymous with "substantial doubt." I think it

reasonably likely that the jury interpreted the challenged instruction to mean their doubt must be "substantial" in order to acquit, and that such an erroneous interpretation had the effect of lowering the government's burden of proof.[16] *See Cage, supra; Adams v. Aiken,* 965 F.2d at 1311; *Monk v. Zelez,* 901 F.2d at 889; *United States v. Atkins,* 487 F.2d at 260; *United States v. Alvero,* 470 F.2d 981 (5th Cir.1972).

Equating "moral certainty" of guilt with the requirement of finding guilt beyond a reasonable doubt improperly suggests to jurors that they may find guilt based upon emotion rather than factual evidence. Further complicating this erroneous suggestion is the fact that the instruction itself focuses very little on the high degree of factual certainty required to convict.[17] Considering the instruction as a whole, I conclude it is reasonably likely that the jury interpreted the challenged instruction to allow a finding of guilt based upon emotion rather than the factual evidence, and based upon something less than certainty of guilt beyond a reasonable doubt, thereby violating due process.[18] *See Cage; Lanigan v. Maloney,* 853 F.2d at 46–48.

Instructing jurors that they "may find an accused guilty upon the strong probabilities of the case" suggests they may base a guilty verdict upon a degree of certainty lower than that required under due process. Although

---

**14.** Section 27–606(2) provides in relevant part:

[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith. . . .

**15.** Three of the six sentences in the challenged instruction do not contain objectionable language.

**16.** In fact, the likelihood that the jury interpreted the instruction to require a higher degree of doubt for acquittal is increased even more due to the fact that the "substantial doubt" language is contained in the one of the more straight-forward sentences in the challenged instruction—a sentence jurors may be more likely to return to and study when searching for an understandable definition of reasonable doubt.

**17.** Indeed, when the challenged instruction refers to the degree of certainty required to find guilt, it often emphasizes what is *not* required to find guilt (e.g., "absolute or mathematical certainty is not required" and "you may be convinced beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken") rather than impressing upon the jury the high degree of factual certainty jurors must have in order to convict.

**18.** Although another jury instruction cautions jurors that when making factual findings they should "be governed only by the evidence" and should not "indulge in speculations, conjectures, or inferences not supported by the evidence" (*see* filing 32, Jury Instruction 1), this general admonition does not reduce the likelihood that, when applying the improperly-defined standard of proof to their factual findings, jurors will base their finding of guilt upon "moral" rather than "factual" certainty.

the instruction goes on to define "strong probabilities" as probabilities "strong enough to exclude any doubt of his guilt that is reasonable," this definition does not negate the likelihood that the jury would interpret the instruction to allow a finding of guilt based upon something akin to a "strong likelihood" or "strong chance" of guilt. The objectionable language suggests to jurors that a strong probability of guilt is the functional equivalent of guilt beyond a reasonable doubt, and any attempt to then qualify this erroneous association by defining strong probabilities as those probabilities which exclude reasonable doubt serves only to further confuse a jury who have already been misled as to the proper definition of reasonable doubt. I conclude it is reasonably likely that the jury interpreted the challenged instruction to allow a finding of guilt based upon the strong probabilities of the case rather than upon a finding of guilt beyond a reasonable doubt, thereby violating due process.

Additionally, I note that a number of accompanying instructions contain general language reminding jurors that guilt must be proven beyond a reasonable doubt, and charging that if the jury has reasonable doubt, they must find the defendant not guilty. *See, e.g.* instructions 4, 5, 10, and 11. While these are obviously proper statements of the law, the instruction purporting to provide the definition of "reasonable doubt" contains many misleading statements, and it is reasonably likely that a juror would rely upon the faulty definition of reasonable doubt when interpreting other instructions referring to the appropriate standard of proof. In this manner the reasonable doubt instruction serves to taint all other references to proof beyond a reasonable doubt.

I therefore conclude that, in attempting to define the concept of reasonable doubt, the challenged instruction so misstated the degree of certainty required to convict, and the degree of doubt required to acquit, that it is reasonably likely the jury applied the instruction in a way that violated the constitution by lowering the government's burden of proof. The constitutional right to be protected from criminal conviction except upon proof beyond a reasonable doubt is perhaps the most important right afforded criminal defendants, as it is "the primary instrument for reducing the risk of convictions resting on factual error." *In re Winship,* 358 U.S. at 363, 90 S.Ct. at 475. While I recognize the challenged instruction was a well-intentioned effort to illustrate the proper standard of proof, the Due Process Clause will not tolerate jury instructions which serve to weaken the reasonable doubt charge. *Cage, supra.*

### III.  *Harmless Error Analysis*

A finding of constitutional error, however, does not end the inquiry in this matter. In order to determine whether petitioner should be granted habeas relief I must consider whether the error may be excused as harmless; that is, I must review the entire record *de novo* and determine whether the unconstitutional instruction "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).[19]

In *Brecht,* the Supreme Court held for the first time that when reviewing trial error on collateral review, the proper harmless-error standard is not the standard previously announced in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), but rather the less-stringent standard enunciated by the Court nearly 50 years ago

---

**19.** I note it remains unclear whether a jury instruction misinforming the jury as to the fundamental standard of proof beyond a reasonable doubt may ever be deemed harmless. *See Perez v. Irwin,* 963 F.2d 499, 503 (2d Cir.1992) (declining to decide the issue and concluding that even under a harmless error analysis petitioner's conviction could not stand); *Lanigan v. Maloney,* 853 F.2d 40, 48 (1st Cir.1988) (acknowledging serious doubt as to whether an improper reasonable doubt instruction could ever be deemed harmless, but leaving that decision for another day and concluding the improper instruction was not harmless). However, the issue may soon be clarified, as the Supreme Court recently granted certiorari in another Louisiana case to determine whether a constitutionally faulty definition of reasonable doubt can ever be deemed harmless. *See State v. Sullivan,* 596 So.2d 177 (La.), *cert. granted,* —— U.S. ——, 113 S.Ct. 373, —— L.Ed.2d —— (1992).

in *Kotteakos v. United States*, 328 U.S. at 776, 66 S.Ct. at 1253. A majority of the Court reasoned that the *Kotteakos* standard for determining harmless error is "better tailored to the nature and purpose of collateral review" and "promotes the considerations underlying our habeas jurisprudence." *Brecht* —— U.S. at ——, 113 S.Ct. at 1714. The Court explained the *Kotteakos* standard as follows:

> The test under *Kotteakos* is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." [citation omitted]. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."

*Brecht* at ——, 113 S.Ct. at 1722 (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253). The concurring opinion of Justice Stevens provides some helpful guidelines for courts attempting to apply the *Kotteakos* standard:

> [W]e would misread *Kotteakos* itself if we endorsed only a single-minded focus on how the error may (or may not) have affected the jury's verdict. The habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place, *Kotteakos* is full of warnings to avoid that result. It requires a reviewing court to decide that "the error did not influence the jury," *id.* at 764, 66 S.Ct. at 1248, and that "the judgment was not substantially swayed by the error," *id.* at 765, 66 S.Ct. at 1248.

*Brecht* at ——, 113 S.Ct. at 1724 (Stevens, J., concurring).[20] To apply the harmless-error standard set forth in *Brecht* the court must review the entire record *de novo* to determine whether the constitutional error had a substantial and injurious influence upon the jury's verdict, *Brecht v. Abrahamson*, —— U.S. at ——, 113 S.Ct. at 1723 (Stevens, J., concurring), and the burden is on the state to prove the error was harmless. *Id.* at ——, 113 S.Ct. at 1716, 1723 at 4338, 4341.

In this instance the entire trial record has not been filed with the court, and as a result I am unable to engage in any harmless error analysis. I shall grant respondent fifteen days in which to properly supplement the record.[21] The parties will be given fifteen days thereafter in which to submit supplemental briefs on the issue, after which time the matter will be deemed submitted.

IT THEREFORE HEREBY IS ORDERED respondent shall have fifteen days from the date of this order to properly supplement the record. Petitioner and Respondent shall have fifteen days thereafter to submit supplemental briefs.

Dated May 11, 1993.

### MEMORANDUM, ORDER AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

In the order entered May 11, 1993 (filing 48), I concluded the reasonable doubt instruction used at petitioner's criminal trial so misstated the degree of certainty required to convict, and the degree of doubt required to acquit, that it is reasonably likely the jury applied the instruction in a way that violated the constitution by lowering the government's burden of proof. *Estelle v. McGuire*, —— U.S. ——, —— & n. 4, 112 S.Ct. 475, 482 & n. 4, 116 L.Ed.2d 385 n. 4 (1991); *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112

---

**20.** Justice Stevens went on to explain that the proper inquiry is *not* whether the jurors were right in their judgment regardless of the constitutional error, but rather what effect the error reasonably may have had upon the jury's decision. He explains:

> "The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. . . . This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record."

*Brecht* at 4342 at ——, 113 S.Ct. at 1724 (Stevens, J., concurring) (quoting *Kotteakos* at 764, 66 S.Ct. at 1248.

**21.** Respondent may file either the original or a certified copy of the trial transcript and Bill of Exceptions from petitioner's criminal trial.

L.Ed.2d 339 (1990) (per curiam). However, because the entire trial record had not been filed with the court I was unable to engage in any harmless error analysis, and thus was unable to determine whether petitioner was entitled to habeas relief.[1] The respondent was given fifteen days in which to properly supplement the record, and the parties were given fifteen days thereafter in which to submit supplemental briefs on the harmless error issue, after which time the matter was to be submitted.

■ Two days ago the United States Supreme Court decided *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and clearly held that a constitutionally deficient reasonable doubt instruction is among those constitutional errors which require reversal of a conviction, rather than those that are amenable to harmless error analysis. In light of this decision it is unnecessary to engage in any harmless error analysis. Therefore, I shall withdraw that portion of the May 11 memorandum and order requiring supplementation of the record, and, for the reasons stated in the memorandum, I shall recommend petitioner's request for habeas relief be granted.

**IT THEREFORE HEREBY IS ORDERED** that the portion of the May 11, 1993 memorandum and order (filing 48) entitled "III. Harmless Error Analysis" and the order giving respondent fifteen days to properly supplement the record and giving the parties fifteen days thereafter to submit supplemental briefs, are withdrawn.

**FURTHER, IT THEREFORE HEREBY IS RECOMMENDED** pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for habeas relief be granted for the reasons stated in parts I and II of the memorandum and order entered May 11, 1993 (filing 48), unless the petitioner is granted a new trial within a reasonable time following the entry of judgment.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated June 3, 1993.

---

1. In filing 48 I noted it was unclear whether a jury instruction misinforming the jury as to the fundamental standard of proof beyond a reasonable doubt could ever be deemed harmless, but suggested the issue might soon be clarified by *State v. Sullivan*, 596 So.2d 177 (La.), *cert. grant-* ed, —— U.S. ——, 113 S.Ct. 373, —— L.Ed.2d —— (1992) (granting certiorari in another Louisiana case to determine whether a constitutionally faulty definition of reasonable doubt could ever be deemed harmless). *See* discussion filing 48 at 18 n. 19.