*1112
 
 OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be affirmed.
 

 Viewing the entirely circumstantial evidence in a light most favorable to the prosecution, and giving it the benefit of every reasonable inference to be drawn therefrom
 
 (People v Way,
 
 59 NY2d 361, 365;
 
 People v Montanez,
 
 41 NY2d 53, 57), we agree with the majority at the Appellate Division that defendant’s guilt was proved beyond a reasonable doubt, as the facts from which the inference of his guilt is drawn, when perceived as a whole, are inconsistent with his innocence and exclude to a moral certainty every other reasonable hypothesis
 
 (see, People v Way, supra; People v Barnes,
 
 50 NY2d 375, 380;
 
 People v Montanez, supra; People v Benzinger,
 
 36 NY2d 29, 32).
 

 Defendant was convicted after a jury trial of murder in the second degree for intentionally causing the death of his girlfriend, 20-year-old Lynn Bailey, whose body was found floating in a secluded lake in Ulster County on September 15, 1981. Bailey was tied in a fetal position and wrapped in a black vinyl bag along with rocks and stones, apparently to help sink the body. She had last been seen at approximately 9:40 p.m. on September 10 when she and defendant left the home of a friend in Woodstock to return to the apartment they shared in that same town. The following morning, defendant placed all the belongings of Bailey remaining in the apartment, including her car registration and driver’s license, into plastic bags and took them to a town dump. He then, pursuant to a prior agreement with his rental agent, returned the key to the apartment and received the $600 security deposit. Defendant, who worked as a taxi driver, next, ostensibly on an errand for his employer, drove a taxi into Kingston. He left the car near the bus station in Kingston, purchased a ticket for Los Angeles and boarded a bus.
 

 On September 15, 1981, defendant called Woodstock Town Constable Milton Holsapple. Although defendant stated in this conversation that he was in Los Angeles, toll records later revealed that he called from Las Vegas. At the time of this phone call, Constable Holsapple did not know that Bailey had been murdered, nor had any police department received a report that she was missing. Defendant stated that he was calling to inquire as to whether there was a warrant for his arrest for stealing his employer’s taxicab and to let the police know that he had abandoned it after it broke down, and he had notified his employer’s father of this fact. Defendant then mentioned that he had learned that Bailey was missing. Although defendant
 
 *1113
 
 claimed in a subsequent phone conversation that he heard about Bailey’s disappearance from a friend, Barry Titus, Constable Holsapple testified that in the first phone conversation defendant stated that he had learned this from her parents. Bailey’s parents both testified that they had not spoken with the defendant at any time in September 1981.
 

 Defendant, pursuant to Holsapple’s request, called again the following day, September 16. As the police by then knew that Bailey had been found dead, the second phone conversation, as well as a third one on September 17, were recorded and the tapes of these two conversations were introduced at trial. Defendant, not aware during these conversations that the police knew of Bailey’s death, stated that he and Bailey had an argument on the evening of September 10 which led to a decision to break up. He then agreed to drive her to a nearby town. He told Constable Holsapple that the argument continued in the car because she did not want him to know exactly where she was going and that he finally stopped the car in a secluded area and told her to get out. Defendant asserted that he last saw her when she left his car, at approximately 2:30 a.m. on September 11, and he denied harming her. Defendant discussed his relationship with Bailey at great length in the September 16 and 17 calls, which totaled over
 
 2V2
 
 hours, and the conversations revealed their frequent arguments and breakups, the significant emotional and economic difficulties he faced, and his deep jealousy of her interest in and relationships with other men.
 

 The September 17 conversation was traced and defendant was arrested at a pay phone in San Francisco. At some time between the evening of September 10 and his arrest on September 17, defendant had altered his appearance by substantially shortening the length of his hair and shaving off all his facial growth.
 

 We must assume that the jury, as it was entitled to do, credited Constable Holsapple’s testimony that defendant stated in their first conversation that Bailey’s parents had told him she was missing, credited the parents’ testimony that no such conversation occurred, and rejected defendant’s claim in the second conversation that he had learned of her disappearance from Barry Titus. Constable Holsapple also testified that defendant told him that he had permission to charge calls to his parents’ home phone, and the prosecution introduced phone records which revealed that while defendant had, in fact, charged all of his calls to the Woodstock Police Department to his parents’ number, there was no call placed to Barry Titus charged to that number. The jury could thus permissibly draw the inference
 
 *1114
 
 that defendant had not heard from anybody else that Bailey was missing prior to telling Constable Holsapple this on September 15, which would indicate that he knew she was missing because he had killed her.
 

 There are numerous other pieces of evidence which point towards defendant’s guilt. Defendant was the last person seen with Bailey. By his own admission, they had a fight on the evening of September 10, which caused them to break up. His own description of their relationship and his feelings towards her reveal a motive. After dumping her belongings, he fled New York and dramatically altered his appearance. In his first conversation with Holsapple, he falsely stated that he was in Los Angeles. The jury was entitled to construe his placement of the calls to Holsapple as a feigned posture of cooperation aimed at misleading the police and avoiding becoming a suspect
 
 (cf. People v Harris,
 
 306 NY 345, 348-349).
 

 In sum, the evidence, when viewed in its totality, entitled the jury to find, beyond a reasonable doubt, that defendant intentionally caused the death of Lynn Bailey.
 

 We have considered defendant’s other contentions and find them to be without merit.
 

 Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Alexander concur.
 

 Order affirmed in a memorandum.