■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GRAFTON HEADLEY, ROXROY HAUGHTON, WILLIAM GREEN, and ANTHONY MORRIS, Respondents.—Appeal by the People from an order of the Supreme Court, Queens County (Chetta, J.), dated July 3, 1986, which granted the motions of the defendants Grafton Headley, Roxroy Haughton, William Green and Anthony Morris for a trial order of dismissal setting aside a verdict convicting them of criminal possession of a controlled substance in the first degree, criminal possession of a weapon in the third degree (seven counts), and criminal possession of marihuana in the third degree.

Ordered that the appeal from so much of the order as is in

favor of William Green is dismissed, as it appears that that defendant has died *(see, People v Feliciano,* 68 NY2d 790); and it is further,

Ordered that the order is otherwise affirmed.

The motions by the defendants Grafton Headley, Roxroy Haughton and Anthony Morris (hereinafter the respondents) for a trial order of dismissal setting aside the verdict as against them were properly granted for the reasons set forth in the memorandum decision of Justice Chetta.

Further, as noted by our dissenting colleague, we unanimously find that the statutory presumption set forth in Penal Law § 220.25 (2) does not apply to the facts at bar since the seized drugs were not in open view *(cf., People v Hylton,* 125 AD2d 409, *lv denied* 69 NY2d 881), nor would the presumption apply to the weapons found on the premises *(cf., People v Chandler,* 121 AD2d 644, *lv denied* 68 NY2d 913).

However, unlike the situation in *People v Gina* (137 AD2d 555, *lv denied* 71 NY2d 1027) relied upon by our dissenting colleague, we find that this case is more analogous to the circumstances in *People v Dawkins* (136 AD2d 726). In *Dawkins,* the record indicates that in executing a search warrant, the police claimed that they had to use a battering ram to enter the subject apartment. In the kitchen, the police found the defendant, with a bag containing 17 vials of cocaine under her feet. A search of the premises revealed, in pertinent part, 41 bags of marihuana in the living room. This court held that the defendant could be found to be in constructive possession of the cocaine. However, in light of the fact that the People offered no evidence that "the defendant resided in the apartment, frequented it on a regular basis or otherwise exercised dominion or control over the area where the marihuana was found", this court found that "the defendant's mere presence in the apartment where the marihuana was found was not sufficient, in and of itself, to establish that she exercised the necessary dominion or control to warrant a finding of constructive possession of the marihuana" *(People v Dawkins, supra,* at 727).

Similarly, in this case, the People offered no proof that the respondents had any connection with the apartment, except their presence in the living room on the day in question, or as to how long the respondents had been in the apartment before the arrival of the police. Neither the failure of the respondents to open the apartment door nor their failure to carry identification documents warrants an inference of criminal

intent. With regard to the claim that the rightful owner of the premises would not be so careless as to leave the drugs, weapons and money in the hands of innocent bystanders, we note that the People did not present any evidence that only the respondents were in the apartment at the time the police arrived. Indeed, there was some indication that an individual had escaped out of one of the kitchen windows. Further, the weapons, drugs and money found in the living room were all totally concealed in a metal box on an end table.

Accordingly, since there was no evidence presented by the People establishing that the respondents had actual or constructive possession of the drugs and weapons, the trial court properly issued a trial order of dismissal in their favor. Lawrence, J. P., Spatt and Balletta, JJ., concur.

Weinstein, J., concurs in the dismissal of the appeal from the portion of the order which is in favor of William Green, but otherwise dissents and votes to reverse the order insofar as appealed from by the defendants Headley, Haughton and Morris, to deny the motions of those defendants, and to reinstate the verdict as against them: Criminal Term erred in overturning a jury verdict and granting the defendants' motion for a trial order of dismissal on the ground that the People, on their direct case, had failed to establish the defendants' constructive possession of drugs and weapons discovered by the police during their execution of a search warrant. Viewing the circumstantial evidence in the light most favorable to the People and affording the benefit of every reasonable inference to be drawn therefrom, I find that the evidence adduced was legally sufficient to establish the defendants' constructive possession of the drugs and weapons beyond a reasonable doubt *(see, People v Giuliano,* 65 NY2d 766, 768; *People v Lewis,* 64 NY2d 1111, 1112; *People v Contes,* 60 NY2d 620, 621). The facts from which the inference of guilt is drawn, are, when perceived as a whole, inconsistent with innocence and exclude to a moral certainty every other reasonable hypothesis *(People v Lewis, supra; People v Way,* 59 NY2d 361, 365).

At approximately 5:30 P.M. on February 5, 1985, a team of five police officers from the Queens Narcotics Squad forcibly entered an apartment at 1256 Central Avenue in Far Rockaway to search for drugs pursuant to a duly executed warrant. The entry team first announced themselves as police officers and demanded that the occupants of the apartment open the door. Although they received no verbal response, the police distinctly heard several sets of footsteps scurrying about in-

side the apartment. The apartment was secured by a metal door which had normal locks in addition to timber reinforcements fastened between the doorframe and the intersection of the floor and interior walls. The police ultimately gained entry by utilizing a piece of pipe filled with concrete as a battering ram. It took approximately 24 strikes over a period of at least a minute before the door could be knocked from its hinges.

Upon entering the apartment, the police observed five individuals positioned in the living room against the far wall which leads to the kitchen. A sixth individual, who was later identified as the defendant Headley, was found hanging from a bedroom window with his arm sticking back inside the apartment. The police hauled Headley back into the apartment and placed him in the living room with the others. None of the defendants was the tenant of record. A preliminary frisk for weapons was conducted of each prisoner. Each prisoner was then taken into the bedroom individually and searched thoroughly. None of the male prisoners had any weapons, contraband, money or even identification on his person. A search of the female prisoner, who is not a defendant herein, revealed a small glassine envelope containing a white powder believed to be cocaine. After checking closets and the fire escape to insure that no other individuals had secreted themselves there, the police conducted a systematic search of the apartment.

On the floor of the bedroom, in plain view, and in close proximity to the window from which the defendant Headley had been dangling, the police found a loaded .38 caliber revolver. A further search of the bedroom revealed an open pocketbook containing $2,549 and 18 $5 bills and 110 $1 bills scattered on the floor nearby, a .380 automatic revolver with a magazine containing seven live rounds between the mattress and boxspring, a Bearcat scanner which was turned on and certain drug paraphernalia, including three scales, a grinder, a sifter and a package of pyramid paper. From the bedroom closet, the door of which was partially ajar, the police extracted a maroon leather tote bag with various pockets and zippers. The bag contained 2 large plastic bags of cocaine, 8 smaller plastic bags, a large plastic bag containing a quantity of marihuana, 3 handguns, 2 of which were loaded, 2 holsters, a pouch containing 22 .38 caliber rounds and a box of .22 caliber rounds. Another loaded .38 caliber revolver was discovered beneath the kitchen sink. The kitchen window was broken and the police observed footsteps in the snow on the garage roof. Inside a small box found in the living room were

more packets of a white powdery substance, another handgun and a quantity of currency.

The aggregate weight of the white powdery substance recovered from the apartment was 1 pound, 15½ ounces and 35 grains. Chemical analysis of the substance revealed it to be cocaine of 62.4% purity. The aggregate weight of the vegetable matter analyzed, which was subsequently determined to be marihuana, was 10¼ ounces. A police ballistics expert testified that all of the weapons found in the apartment, as well as the ammunition which was test fired, were operable.

Significantly, the furnishings throughout the apartment were extremely sparse. The living room contained a sofa, a rolled up map, a large box radio, a small table stand, and a rug rolled up behind the sofa. The sole appliance in the kitchen was a small refrigerator. There were no customary household items other than a few knives and forks and 8 or 10 cups. The cupboards were barren of any foodstuffs with the exception of some oatmeal and a few large yams. There were no towels or laundry in the bathroom nor was the plumbing working. The medicine cabinet was completely empty. The bedroom contained a small dresser atop which various paraphernalia associated with drugs was found, a mattress and box spring without any coverings or pillows, and a few articles of clothing which could have been worn by either a male or a female. Although there was a working telephone in the apartment, there was no listing for it.

The jury returned a verdict finding the defendants guilty as charged. By order dated July 3, 1986, Justice Chetta granted the defendants' motions for a trial order of dismissal, set aside the verdict, and ordered the defendants' release on the ground that the evidence adduced at this lengthy trial was legally insufficient to establish their dominion or control over the contraband or the apartment.

With respect to a trial order of dismissal, CPL 290.10 (1) provides as follows: "At the conclusion of the people's case or at the conclusion of all the evidence, the court may, except as provided in subdivision two, upon motion of the defendant, (a) issue a 'trial order of dismissal,' dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense, or (b) reserve decision on the motion until after the verdict has been rendered and accepted by the court. Where a court has reserved decision and the jury thereafter renders a verdict of guilty, the court shall proceed to determine the motion upon such evidence as it would have

been authorized to consider upon the motion had the court not reserved decision. If the court determines that such motion should have been granted upon the ground specified in paragraph (a) herein, it shall enter an order both setting aside the verdict and dismissing any count of the indictment upon such ground".

In the instant case, I concur with the People's contention that the trial court failed to assess the evidence in the light most favorable to the People. While the "drug factory" presumption of Penal Law § 220.25 (2) does not apply in the instant case inasmuch as it cannot reasonably be contended that the narcotics found were in open view (cf., *People v Frazier*, 138 AD2d 401; *People v Hylton*, 125 AD2d 409; *People v Chandler*, 121 AD2d 644), I find the evidence patently sufficient to establish that the defendants possessed the drugs and weapons constructively by exercising dominion and control over them (Penal Law § 10.00 [8]).

The condition of the subject apartment, in particular, the formidable metal door reinforced by wooden beams securely attached to interior walls, the operable handguns scattered throughout the rooms and the large quantity of live ammunition, was ideally suited for a specific illegal purpose, i.e., guarding an extremely valuable illicit drug. Significantly, the barren and Spartan-like nature of the apartment negated any suggestion of conventional residency or the possibility that the defendants had gathered for any purely social function. That the defendants were not new entrants who were totally ignorant of the sinister purpose to which this particular apartment had been put to use, can be inferred from their act of hurriedly scurrying about at the approach of the police and from the fact that with the exception of the defendant Headley who was found hanging outside the bedroom window, their clothes were dry on a wet and snowy evening. Furthermore, the defendants' uniform shedding of all identification under this bizarre confluence of conditions was entirely consonant with a criminal, as opposed to an innocent, purpose.

The fact that the apartment was not owned or leased by any of these defendants does not militate against an inference of guilt under a theory of constructive possession (see, *People v Schriber*, 34 AD2d 852, 853, affd 29 NY2d 780). "The key is control of the premises and at the outset it is noted that control is not necessarily limited to the tenant of rented premises because control can be delegated or shared" (*People v Robertson*, 61 AD2d 600, 607-608, affd 48 NY2d 993).

Control in the instant case consisted of the occupant's power

to keep out all would-be entrants to the subject apartment. The defendants here affirmatively asserted their dominion and control by failing to open the barricaded door and thereby impeding the entry of the police. Moreover, it defies logic to contend that the rightful owner of the premises would be so careless as to leave such valuable property in the hands of innocent bystanders who could, in the owner's absence, either help themselves to it or alert the police of its existence. To maintain on these facts that the People failed to establish that the defendants constructively possessed the drugs and weapons found by the police by exercising dominion and control over them belies the reality of the situation. The instant case bears certain similarities to the case of *People v Gina* (137 AD2d 555, *lv denied* 71 NY2d 1027) in which the defendant was hiding in the ceiling rafters of a burglarized jewelry store when the police discovered him. In rejecting the defendant's contention that he was therefore unable to exercise dominion and control over the bag of stolen jewelry lying on the floor of the burglarized premises, the court concluded that there was ample evidence for the jury to conclude that the arrival of the police had merely interrupted the defendant's wrongful possession of the subject property. I am of the view that the aforesaid reasoning should be applied to these facts as well.

Inasmuch as the People offered legally sufficient evidence to establish the defendants' guilt of the crimes charged, the trial court improperly set aside the verdict in this case. Accordingly, I vote to reverse the order granting the defendants' motion for a trial order of dismissal and to reinstate the verdict against the defendants Headley, Haughton and Morris. I concur with the majority solely to the extent of not reinstating the verdict against the defendant Green who was the victim of a homicide at some point subsequent to the trial.