■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WESLEY CHALMARS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Brill, J.), rendered June 19, 1989, convicting him of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

"Viewing the evidence in the light most favorable to the prosecution, and giving it the benefit of every reasonable inference to be drawn therefrom" *(People v Giuliano,* 65 NY2d 766, 768), we find that the circumstantial evidence adduced at the trial was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. An undercover police officer purchased from one of the codefendants $10 worth of cocaine, through the peephole in the door of an apartment on the third floor of a building on Nostrand Avenue in Brooklyn. The apartment was locked and closely guarded. Within minutes after the sale, the undercover officer's back-up team entered the building, and, using a battering ram, they forcibly gained entry to the apartment through the front door, which was the

only way into and out of the apartment. Inside the apartment, the two codefendants were found in the front room, which contained only a television set, a high-rise bed and a table. Approximately 940 vials containing cocaine and 40 tin foil packets containing cocaine were found on the bottom shelf of the table, and $2,375 and $10 of prerecorded buy money were found on the top of the table. Additionally, two plastic bags containing cocaine and one plastic bag containing a diluent were found on a shelf of an open closet in the front room. The police also observed a "car fender or a car hood" and a tire in the rear of the apartment, and in the kitchen area, the cabinets were open and broken, some of them hanging off the wall, and the stove was away from the wall.

At approximately the same time as the police broke into the apartment, the defendant opened and leaned out of a window in a rear room in the apartment, which room was approximately 25 feet from the front door. The defendant was ordered back inside the room by an officer who had been stationed on the roof of the building. The defendant then walked out of the rear room into the hallway of the apartment. During a subsequent search of the rear room, which was in complete disarray, the police found an operable and loaded .30 caliber sawed-off rifle in a hole in the wall.

Under these circumstances, the jury could reasonably conclude that the defendant, who was found in the locked and closely guarded apartment, which was arranged to be used only for the sale of drugs, was acting in concert with the codefendant who physically sold the cocaine to the undercover police officer, and that the defendant was in constructive possession of the drugs, the drug paraphernalia and the weapon found in the apartment (see, People v Tirado, 38 NY2d 955). "The facts from which the inference of the defendant's guilt is drawn are inconsistent with his innocence and exclude to a moral certainty every other reasonable hypothesis but guilt" (People v Persaud, 166 AD2d 466, 467, citing People v Giuliano, supra, at 767). In addition, upon the exercise of our factual review power, we find that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]).

The defendant's remaining contention is without merit. Kunzeman, J. P., Kooper, Sullivan and Lawrence, JJ., concur.