Wesley **CHALMERS**, Petitioner–Appellant,

v.

Robert **MITCHELL**, Superintendent, Eastern Correctional Facility, Respondent–Appellee.

No. 137, Docket 94–2672.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1995.

Decided Jan. 3, 1996.

Robert E. Toone, Law Student Intern, Yale Law School, New Haven, CT (Brett Dignam, The Jerome N. Frank Legal Services Organization, New Haven, CT, of counsel), for Appellant.

Andrea G. Klineman, Assistant District Attorney, Kings County, Brooklyn, NY (Charles J. Hynes, District Attorney, Kings County, Roseann B. MacKerchnie, Noreen Healey, Assistant District Attorneys, Kings County, Brooklyn, NY, of counsel), for Appellees.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Wesley Chalmers, an inmate at Eastern Correctional Facility, appeals the denial of his petition for of a writ of *habeas corpus* by the United States District Court for the Eastern District of New York, Sifton, *C.J.* Chalmers filed a notice of appeal on November 10, 1994 and the district court issued a certificate of probable cause on November

22, 1994. We have jurisdiction under 28 U.S.C. § 2253. We affirm the district court's denial of the petition and hold that the trial judge's instruction defining reasonable doubt as "a doubt for which some good reason can be given," while an incorrect statement of law which should never be made, did not rise to the level of a due process violation when taken in the context of the entire instruction. Furthermore, we hold that the convictions for criminal possession and criminal sale of cocaine were supported by sufficient evidence.

## BACKGROUND

Wesley Chalmers was arrested during a buy and bust operation conducted by the New York City Police Department in Brooklyn. Two undercover officers approached an apartment they suspected was being used in the sale of cocaine, climbed the staircase and approached an upstairs apartment with the intent to buy cocaine. The officers testified that they knocked on the apartment door, which contained a smaller, peephole door, were visually inspected by a person in the apartment who then opened the peephole door, and through it sold the officers two vials of cocaine for ten dollars. Soon thereafter, backup officers raided the apartment and arrested several persons found inside, including the appellant. The police discovered approximately 940 vials of cocaine, 40 tinfoil packets of cocaine, two additional bags of cocaine and a bag of dilutant, in addition to $2,375 in cash including the $10 used by the undercover police officers, all located in the front room of the apartment. Appellant was coming out of a back room in the apartment when he was discovered and arrested.

Appellant was charged with and convicted of criminal possession and sale of narcotics and criminal possession of a weapon after a jury trial in New York Supreme Court in Kings County. After an unsuccessful journey through the state appellate courts, *People v. Chalmars*, 176 A.D.2d 239, 574 N.Y.S.2d 205 (2d Dep't 1991), *leave to appeal denied*, 79 N.Y.2d 854, 580 N.Y.S.2d 726, 588 N.E.2d 761 (1992), where he claimed that the evidence was legally insufficient to support the drug-related convictions and that the jury instructions were so flawed regarding the definition of reasonable doubt as to constitute a due process violation, appellant filed this petition for a writ of *habeas corpus* in the district court.

Chalmers contends that his conviction violated his federal due process rights in two ways. First, he claims that the trial court's instructions to the jury stating that a reasonable doubt is "a doubt for which some good reason can be given" impermissibly and unconstitutionally (1) shifted the burden of proof to him, and (2) lowered the burden of proof required of the prosecution. Second, he claims that even under the proper reasonable doubt standard, the prosecution failed to present legally sufficient evidence of his presence in the apartment, and of his possession and sale of the drugs found in the apartment to support his convictions.

## DISCUSSION

### A. Standard of Review

■ We review *de novo* the denial of a petition for a writ of *habeas corpus* brought under 28 U.S.C. § 2254. *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir.1994).

### B. The Definition of Reasonable Doubt

■ It is a fundamental tenet of American law that a criminal defendant can only be convicted if the factfinder, normally a jury, finds guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). The perfect definition of "reasonable doubt," however, is as uncertain as its place in American jurisprudence is certain. The United States Constitution does not require a trial court to define reasonable doubt for the jury. *Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). In fact, efforts by trial judges to explain the meaning of reasonable doubt to juries often create more confusion than clarity. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954) (citing *Miles v. United States*, 103 U.S. 304, 312, 26 L.Ed. 481 (1880)). Nevertheless, when a trial court attempts to explain "reasonable doubt" for a jury, reviewing courts must scrutinize the

instructions to ensure that the defendant was not judged by a lesser standard than "proof beyond a reasonable doubt."

■■■ A guilty verdict rendered by a jury that applied a standard less demanding than "proof beyond a reasonable doubt" is a nullity. *Sullivan v. Louisiana,* 508 U.S. 275, ——–——, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993). Because being judged by any lesser standard would violate a defendant's due process rights, a guilty verdict reached by application of a standard less than proof beyond a reasonable doubt must be overturned. *Winship,* 397 U.S. at 364, 90 S.Ct. at 1072–73.

■■■ We assume that a jury applies the instructions it is given. Therefore, if a jury convicts after it was told that it may do so even if it finds the prosecution has not proven its case beyond a reasonable doubt, we will assume that the jury applied the lower standard. It is for this reason that the Supreme Court held that harmless error review of the erroneous definition of reasonable doubt is improper. *Sullivan,* 508 U.S. at ——–——, 113 S.Ct. at 2081–82. In other words, the harmless error doctrine is inapplicable to the incorrect definition of reasonable doubt because the due process right involved lies in being judged by the correct standard. If the jury convicts by applying the wrong standard, even if it would have convicted under the right standard, the conviction must be overturned, for the right of the defendant was violated by the standard applied, not the result obtained. *Id.*

■■■ We cannot know what this jury did behind closed doors. The standard the jury applied can only be gleaned from examining what the jury was told. Just as we hesitate to disturb a jury's factual findings outside clear evidence refuting its findings, we will not disturb a conviction unless we conclude that it is "reasonably likely" that the jury applied the wrong standard. *Victor,* —— U.S. at ——, 114 S.Ct. at 1248.

■■■ In attempting to determine what standard the jury actually applied, we cannot focus exclusively on a few erroneous words in the jury instruction and then reverse the conviction unless it is "reasonably likely" that the jury applied the erroneous standard described or implied by those few words. We must examine the overall charge that the jury heard for a better view of the standard the jury took into its deliberations and applied. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975) ("a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge" (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973))).

■■■ Sometimes, erroneous portions of the jury instructions are offset when considered in context or explained by the trial court in later sections of the instruction. *Park,* 421 U.S. at 674–75 & n. 16, 95 S.Ct. at 1912–13 & n. 16 (holding that, among other things, the prosecutor's summation put the challenged portions of the jury instructions into the proper light). Other times, a seemingly innocuous incorrect statement becomes extremely damaging when coupled with other sections of the jury instructions or with improper conduct by counsel during the trial. *United States v. Birbal,* 62 F.3d 456, 462 (2d Cir.1995) (holding that trial court's statement that jury *may* acquit the defendant if prosecution fails to prove all elements beyond a reasonable doubt made a bad but non-reversible jury charge reversible). Thus a challenged portion of the jury instructions "may not be judged in artificial isolation," *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400, but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury.

■■■ Chalmers suggests two reasons why we should hold that it was "reasonably likely" that the jury that convicted him applied a standard lower than "beyond a reasonable doubt." He challenges the trial court's description of a reasonable doubt as "a doubt for which some good reason can be given." He also points to the prosecutor's juxtaposition of "reasonable doubt" and the phrase "to the exclusion of a moral certainty"

during summation, a claim that we will consider as part of the context in which the challenged jury instruction was heard by the jury.[1]

### 1. Did the Instructions Impermissibly Shift the Burden of Proof?

The first argument advanced by the appellant is that by instructing the jury that a reasonable doubt is one for which some good reason can be given, the trial court shifted the burden of proof onto the defense to provide reasons. In earlier decisions we have warned that jury instructions that imply that jurors should be ready to give a reason for their doubts are "not approved" and "perhaps unwise" but have never held such an instruction to be reversible error. *United States v. Davis,* 328 F.2d 864, 867–68 (2d Cir.1964); *see also Barber v. Scully,* 557 F.Supp. 1292, 1296 (S.D.N.Y.1983) (upholding a similar charge), *aff'd,* 731 F.2d 1073 (2d Cir.1984). The danger in such an instruction is that a jury will take it to mean that they must be ready to articulate a reason for their doubts. Thus, it is argued that the jury might believe it should look to the defendant to articulate the reason for the doubt, in essence requiring him to prove his innocence. We acknowledge that the "good reason" language might mislead a jury into looking to the defendant for an explanation. However, we conclude that in the context of the whole instruction in this case it is not reasonably likely that the jurors misunderstood the proper burden of proof. The trial court made it clear in the closing of its instruction that the burden of proof never shifts to the defendant and that no defendant is ever required to prove his innocence.

### 2. Did the Instructions Impermissibly Raise the Quantum of Doubt Necessary to Acquit From Reasonable to Good?

The second argument raised by Chalmers is that by instructing the jury that a reasonable doubt is one for which some good reason can be given, the trial court impermissibly, and unconstitutionally, raised the level of doubt needed for acquittal from "a reasonable reason" to "a good reason." It is no doubt true that *if* the trial court plainly said "a reasonable doubt is not enough to acquit the defendant, a good reason is required," it would be reversible error unless saved by strong correcting language. Such a statement would clearly lower the prosecution's burden. This is not what happened in this case, however. In context, the use of the word "good" by the trial court was intended to mean doubt based on the existence or non-existence of evidence, as opposed to based on conjecture or imagination. The trial court's next sentence after mentioning the contested "good reason" explained that "[t]he doubt, to be reasonable, must *therefore* arise because of the nature and quality of the evidence in the case, or from the lack or insufficiency of the evidence in the case." Thus the trial court's use of the word "good" was intended, and likely understood, to mean that the proper foundation of a reasonable doubt was in fact rather than fantasy.

Chalmers relies on *Dunn v. Perrin,* 570 F.2d 21 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978), as support for his contention that the "good reason" instruction violated due process. As Chalmers pointed out in his brief, the instruction in *Dunn* described reasonable doubt as "doubt as for the existence of which a reasonable person can give or suggest a

---

**1.** Chalmers argues that the prosecution's use of the phrase "to the exclusion of a moral certainty" five times in its summation is an independent ground for reversal under *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (stating that prosecutor's "persistent and clearly improper remarks [regarding defendant's failure to testify] amounted to such egregious misconduct as to render Floyd's trial fundamentally unfair"). Because Chalmers failed to raise this claim as an independent ground for *habeas* relief in his petition to the district court, we will not now enter-

tain it as an independent claim. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Uziel v. Hadden,* 779 F.2d 4, 5 (2d Cir.1985) (per curiam). We must, however, take into account the prosecutor's comments in evaluating the challenged jury instructions regarding reasonable doubt, for statements by the prosecution in its summation can aggravate an error in the jury instructions. *United States v. Park,* 421 U.S. at 674–75 & n. 16, 95 S.Ct. at 1912–13 & n. 16.

good and sufficient reason." *Id.* at 23. The *Dunn* Court noted that the "good reason" portion of the instruction, standing alone, was improper but not reversible error. *Id.* Instead, the *Dunn* Court focused on the following portion of the instruction which told the jury that:

[Reasonable doubt] does not mean a trivial or a frivolous doubt nor one which can be readily or easily explained away, *but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments against it* and would cause a fair-minded person to refrain from acting in regard to some transaction of importance and seriousness equal to this case.

*Id.* at 23–24 & n. 1 (emphasis added). The court clearly, and correctly, held this portion of the instruction to be the reversible error in the case because it dramatically increased the *amount* and *quality* of doubt required for acquittal rather than illustrating the proper foundation of a reasonable doubt. *Id.* at 24.

Furthermore, the use of "good" in this case to qualify "reason" is similar to the jury instruction upheld in *Victor*, which stated in pertinent part:

A reasonable doubt is *an actual and substantial doubt* arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Victor,* —— U.S. at ——, 114 S.Ct. at 1249. The Court in *Victor* held that "substantial" did not raise the quantum of doubt requiring acquittal because it was clear from the context that "substantial" would have been taken by the jury to mean the opposite of doubt based on "fanciful conjecture," and not taken to mean that a substantial *amount* of doubt was required. *Id.* at ——, 114 S.Ct. at 1250.

 Because the *Victor* standard asks what standard the jury *actually* applied, we cannot end our inquiry after deciding that the challenged portion of the jury instructions, in the context of the whole charge, does not offend due process. We must view the challenged portions of the instructions in the context of the whole trial as observed by the jury. Just as a trial court's cogent explanation of reasonable doubt can correct an earlier erroneous definition, a combination of independently non-reversible errors that taken together lead the jury to convict under a standard less than that required by the Due Process Clause is grounds for overturning a conviction.

3. *Did the Prosecutor's Misstatements Aggravate the Instruction's Errors to the Level of a Due Process Violation?*

 The aggravating circumstance that confronts us in this case stems from the prosecutor's repeated use of the phrase "beyond a reasonable doubt, to the exclusion of a moral certainty" when discussing the case against the appellant during his summation.[2] Analytically, we must approach the issue in three steps. First, were the prosecutor's statements during summation erroneous statements of the law? Second, if they were erroneous, did they add to any misunderstanding held by the jury of the level of doubt that constitutes reasonable doubt? Third, if they were erroneous, did they add to any misunderstanding held by the jury of the proper burden of proof? If we find that the prosecution misstated the law during summation in a way that made it "reasonably likely" that the jury applied a standard inconsistent with the "beyond a reasonable doubt" standard, either in quantitative terms or in terms of the burden of proof, then we must overturn the conviction.

 Chalmers contends that the prosecutor's repeated use of the phrase "beyond a reasonable doubt, to the exclusion of a moral certainty" during summation was a misstatement of the law. We agree. The use of "moral certainty" language in jury charges

---

2. The first instance of this juxtaposition was as follows:

The People in this case proved beyond a reasonable doubt, to an exclusion of a moral certainty—[objection made and overruled]—that these four defendants, working together, sold two vials of crack.

has a long and criticized history, and similar language in a jury instruction was reversed by us only three years ago. *Perez v. Irwin,* 963 F.2d 499 (2d Cir.1992). In *Perez,* the trial court's instruction defined reasonable doubt as "doubt to a moral certainty of the defendant's guilt" three times. *Id.* at 502. We granted *habeas corpus* relief stating:

> In the instant case the phrase "moral certainty" was used not to emphasize the prosecution's burden of proof, but rather incorrectly to define the degree of doubt necessary to entitle petitioner to an acquittal. By using the expression in this fashion the trial court placed the burden of the moral certainty requirement on the defendant rather than on the prosecution. As a consequence, in order for the jury to acquit the defendant, he was required to establish *doubt* of his guilt to the level of "moral certainty", clearly contrary to the teachings of *In re Winship.*

*Id.* (citation omitted). In appellant's trial, the prosecutor equated reasonable doubt and the exclusion of moral certainty, similarly, although less strongly, insinuating that a reasonable doubt was a doubt of guilt held with moral certainty. Indeed, in one instance, the prosecutor pointed out that the defense had not provided any evidence beyond a reasonable doubt, to the exclusion of a moral certainty, that the defendants were innocent.[3] Before discussing the impact of these statements on the jury's deliberations, we must address their procedural posture. The history of this case differs from *Perez* in that Chalmers in his petition to the district court failed to raise an independent claim based on the prosecutor's statements. Therefore, the only ground on which these comments properly are before us is as context. We examine these statements by the prosecutor to determine if they created a reasonable likelihood that the jury understood the trial court's doubt "for which some good reason can be given" instruction to mean they could convict even if the prosecution had not proved each element beyond a reasonable doubt. *Victor,* —— U.S. at ——, 114 S.Ct. at 1248.

As we discussed above, the trial court's instruction that a reasonable doubt is one for

which some good reason can be given was not itself reversible error either as an impermissible increase of the level of doubt necessary for acquittal or as an impermissible shifting of the burden of proof. This becomes a closer question in light of the prosecutor's erroneous statements of law during summation, statements that were twice objected to unsuccessfully. Nevertheless, we hold that it is not reasonably likely that the jury applied the incorrect standard. *Id.*

Of the five times the prosecutor paired reasonable doubt and the exclusion of a moral certainty, four stated, in essence that the government has proved beyond a reasonable doubt, to the exclusion of a moral certainty the existence of some element of the crimes charged. But in the fourth of the five instances, the prosecutor stated that *"there's no evidence, beyond a reasonable doubt, to the exclusion of any moral certainty, that these four men weren't working together, because they were."* This confusing portion of the prosecutor's summation suggests, incorrectly, that the defendant had the burden of providing the reasonable doubt to the jury. We now re-examine the propriety of the "for which some good reason can be given" portion of the instructions in light of the prosecutor's misstatements of law.

With regard to the argument that the word "good" raises the quantum of doubt necessary for acquittal to a level higher than "reasonable," the prosecutor's repeated equating of reasonable doubt with "to the exclusion of a moral certainty" aggravates that statement. *Perez,* 963 F.2d at 502. The trial court improperly overruled each of the appellant's two objections to this language. Language of "moral certainty" is rarely enlightening in the reasonable doubt context, and as used here, was a misstatement of the *In re Winship* standard. Nevertheless, we cannot say that this repeated error likely imprinted the prosecutor's misstatements in the minds of the jurors. First, the phrase as employed is extremely confusing as to exactly what it means. Second, the defense counsel never had a chance to articulate the argument that it lowered the burden of proof because the court interrupted. Further-

---

**3.** The obvious error in this statement is discussed at length, *infra.*

more, the defense did not object to the prosecutor's fourth, and most erroneous, use of the moral certainty language, and thus the court did not stamp its imprimatur on the prosecutor's statement that the defense did not prove that the defendants did not commit the crimes.

Had the misstatements of law made here by the prosecutor appeared in the trial court's instructions, we would order that the writ issue as the district court did in *Perez.* Unlike *Perez,* though, the improper "moral certainty" language was used by the prosecutor in arguing the facts to the jury. The trial court then gave its own reasonable doubt instruction where it described, correctly, a reasonable doubt as a doubt that would make a person hesitate from acting in an important matter and as a doubt based in the evidence.[4] We hold that the trial court's proper instructions were sufficient to render it not "reasonably likely" that the jury required more doubt to acquit than proper under *In re Winship.*

The fact that the prosecutor, and not the court, introduced the moral certainty language is crucial to the argument that the "doubt for which some good reason can be given" language in the instructions shifted the burden of producing reasonable doubt onto the defendant.[5] We note that unlike *Perez,* the judge in the present case gave the proper instruction regarding the burden of proof, and ensured that the jury knew the proper standard to apply. The jury was instructed that the arguments of counsel were not binding and that it was required to apply the language given to them by the court. Furthermore, the proper instruction was nearly the last thing the jury was told before deliberating, making it more likely that it is what they remembered. The court stated, in pertinent part:

You must start by saying that he must be innocent; and only if the evidence which you accept and believe convinces you beyond a reasonable doubt that the presumption must be discarded and a verdict of guilty returned, only then is the presumption destroyed.... This burden remains on the prosecution throughout the trial *and never shifts to the defendant. No defendant is required to prove his innocence,* and each element of the crime submitted to you, as I will define the elements, must be proved beyond a reasonable doubt.

(emphasis added). This language by the trial court likely corrected any misperception the jury may have held as a result of the standard suggested by the prosecutor's summation.

We caution trial courts that defining reasonable doubt as a doubt "for which some good reason can be given" only complicates matters and adds little to the jury's understanding of reasonable doubt. Variations from language that is tried and true, like the variation in this case, illustrate that "in some circumstances the plodding repetition of approved language is the better course to follow." *Perez,* 963 F.2d at 500. Appellate courts will not hesitate to overturn convictions obtained where the circumstances indicate that the trial court has not corrected an otherwise erroneous definition of "reasonable doubt" made in summation or during instructions through the use of strong corrective language describing the correct standard as articulated in *In re Winship.*

### C. *Sufficiency of the Evidence*

█ Chalmers also claims that the evidence presented at his trial was legally insufficient to support his conviction. More specifically, he claims that no rational trier of fact could find that he had been in construc-

---

**4.** As is often the case, the trial judge found it easier to define reasonable doubt by describing what is not a reasonable doubt. The court stated:

A doubt of guilt is not reasonable if, instead of being based on the nature and quality of the evidence or insufficiency of the evidence, it is based on some guess or whim or speculation unrelated to the evidence in the case. Also, a

doubt of guilt is not a reasonable doubt if it is based merely on sympathy for the defendant or from a mere desire by a juror to avoid a disagreeable duty.

**5.** It cannot be said that the prosecutor was only commenting on the unreliability of the defendants' case because three of the four defendants did not put on a case.

tive possession of the drugs seized and that no rational trier of fact could find that he was present when the drugs were sold to the undercover officers. We will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We hold that there was sufficient evidence to support both the findings of constructive possession and sale.

### 1. *Constructive Possession*

The New York Penal Law defines possession as "to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y.Penal Law § 10.00(8) (McKinney 1987). There was no dispute that appellant was not in actual possession of the drugs, thus we must conclude that the jury convicted on the theory of constructive possession. In New York, one is in constructive possession when he is able to exercise dominion or control over tangible property. As a matter of logic, the jury in this case must have concluded that Chalmers had dominion or control over the room in which the drugs were found, and that by that control, he had dominion or control over the drugs in that room.

Appellant challenges this chain of reasoning as unsupported by the evidence. We disagree. Chalmers argues that *People v. Headley*, 143 A.D.2d 937, 533 N.Y.S.2d 562 (2d Dep't 1988), *aff'd*, 74 N.Y.2d 858, 547 N.Y.S.2d 827, 547 N.E.2d 82 (1989), requires a holding that there was legally insufficient evidence in this case. In *Headley*, the Appellate Division held that constructive possession had not been sufficiently proven to support a conviction where drugs and guns were found in a closed box on an end table next to the couch on which the defendants were sitting. The court stated that the prosecution failed to show that (1) the defendants resided at the apartment, (2) that the defendants frequented the apartment on a regular

basis, or (3) that the defendants otherwise exercised dominion or control over the apartment. *Headley*, 143 A.D.2d 937, 533 N.Y.S.2d at 563.

Chalmers correctly asserts that the prosecution did not show that he resided at the apartment or that he was a frequent visitor. However, the surrounding circumstances are such that a rational jury could find that he was "otherwise exercising dominion or control" over the apartment, and thus over the drugs. *Id.* The drugs and the marked money used in the buy and bust were found in plain view in the apartment, and although they were not in the same room with Chalmers, a rational jury could deduce that "the arrival of the police had merely interrupted the defendant's wrongful 'possession' of the [drugs]." *People v. Gina*, 137 A.D.2d 555, 524 N.Y.S.2d 296, 297 (2d Dep't) (holding that defendant found hiding in rafters of burglarized jewelry store was properly convicted of possession of stolen jewels that were in a bag on the floor below), *leave to appeal denied*, 71 N.Y.2d 1027, 530 N.Y.S.2d 562, 526 N.E.2d 54 (1988). The jury could conclude that Chalmers had been in the room with the drugs when the police arrived and had fled to another room. This conclusion would be supported by the appellant's leaning out of the bedroom window—presumably looking for an escape route—until being ordered back inside, which the jury also could have interpreted as consciousness of guilt.

Even if the jury did not believe that appellant fled the front room upon hearing the battering ram at the front door, a finding of constructive possession was still justified. Just as the defendant in *Gina* argued that his position in the rafters rendered him "unable to exercise dominion and control" over the jewels in the bag, *Gina*, 137 A.D.2d 555, 524 N.Y.S.2d at 297, Chalmers' location in the next room, he claims, makes a proper finding of dominion and control over the narcotics irrational. But a rational jury could find constructive possession where "the defendant ha[d] dominion or control over the *area* the drugs were found in."[6] *Headley*,

---

**6.** This is a permissible inference and is not dependent on New York's open room presumption, which instructs a jury that they may presume

that all persons in a room have possession of contraband found in the open where the circumstances indicate it is being prepared for distribu-

143 A.D.2d at 938, 533 N.Y.S.2d at 563 (emphasis added). We believe a rational trier of fact could find that appellant exercised dominion or control over the room containing the drugs beyond a reasonable doubt. The condition of the apartment could have increased the likelihood in a rational juror's mind that all those present in the apartment had dominion or control over *all* rooms. The evidence showed that the kitchen was in severe disrepair and there was some type of car hood or fender in the hallway. The jury could rationally conclude that the walls between the rooms were not meant to separate spheres of dominion or control, but instead, that their only function was to hold up the ceiling. Any contention that Chalmers was innocently present or present as a buyer and not a seller is belied by the high security present. Persons wishing to buy drugs were clearly kept outside the apartment and forced to transact business through the peephole in the front door.[7]

### 2. *Sufficiency of Evidence of Appellant's Presence During the Sale*

■ Chalmers argues that no rational jury could find that he was involved in the sale of drugs to the undercover officers for two reasons. First, the officer who looked through the peephole did not identify appellant as one of those involved in passing out the drugs. This argument is not persuasive because it only proves that Chalmers was not visible through the small peephole located four and one-half feet above the floor, not that appellant was not present. We do not contend that the only permissible finding a rational jury could have made was that appellant was present and selling drugs, but only that a rational jury *could* find that even from the back room where Chalmers was found, he was working, at the time of the sale

charged, in concert with those who actually handled the specific exchange. The condition of the apartment made it rational for the jury to believe that all persons in it were working together to sell drugs. *See Soto,* 959 F.2d at 1185 (holding that presence of appellant under circumstances indicating that those present were involved in drug trade was sufficient). The jury also could have concluded that Chalmers had been there for innocent reasons, but that possibility does not merit the granting of the *habeas corpus* petition. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (holding that if *any* rational jury could find guilt beyond a reasonable doubt, verdict must be upheld).

Second, Chalmers argues that the prosecution did not show that he was in the apartment at the time of the sale. The police testified that there was traffic in and out between the time of the buy and the time of the bust. However, a jury could rationally conclude that appellant was present at the time of the sale for which he was charged and convicted. *Id.* The evidence that all persons inside the apartment were involved in the sale of drugs to the undercover officer weighs against a finding that Chalmers, as a seller, would be in and out of the apartment frequently. While there may have been frequent traffic to the front door of the apartment and back, this does not indicate heavy traffic in and out of the heavily secured, controlled-access apartment. That the jury could have rationally concluded that Chalmers was not there is not sufficient to merit the granting of the petition.

### CONCLUSION

For the reasons stated above, the decision of the district court is affirmed.

tion or manufacture. N.Y.Penal Law § 220.25(2) (McKinney 1987). The trial court found that the presumption did not apply to the appellant because he was not alleged to have been seen in the room in which the drugs were found.

7. We faced a similar claim in *United States v. Soto,* 959 F.2d 1181 (2d Cir.1992). In *Soto,* the appellant claimed that his mere presence in an apartment used to manufacture and process crack cocaine was legally insufficient to support his conviction for possession with intent to sell

cocaine. We held that the circumstances surrounding appellant's presence in the apartment were sufficient for the jury to disbelieve his claim that he was present to buy drugs, not to sell them. We stated that "[t]he jury could ... have reasonably determined that only trusted members of the operation would be permitted entry into the apartment, because allowing outsiders to have access to an apartment with large quantities of narcotics in plain view could compromise the security of the operation." *Id.* at 1185.

JON O. NEWMAN, Chief Judge, dissenting:

The state court jury that convicted Wesley Chalmers of narcotics offenses was instructed that a reasonable doubt is "a doubt for which some good reason can be given." The majority appears to acknowledge that this definition of reasonable doubt was error and also acknowledges that harmless error analysis is inapplicable to an erroneous definition of reasonable doubt. *See Sullivan v. Louisiana*, 508 U.S. 275, ———–———, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993). Nevertheless, the majority holds that it was not "reasonably likely," *see Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1248, 127 L.Ed.2d 583 (1994), that the jury applied an erroneous standard of reasonable doubt and therefore rejects Chalmers's due process challenge. In my view, the majority reaches this conclusion by failing to appreciate the significance of the trial judge's improper definition of reasonable doubt. Because I believe it was reasonably likely—indeed, highly likely—that the instruction led the jury to apply an incorrect standard of reasonable doubt, I respectfully dissent.

I.

Instructing a jury that a reasonable doubt is "a doubt for which some good reason can be given" fundamentally misstates the reasonable doubt standard and impermissibly risks a finding of guilt by a standard less than the constitutionally required standard of proof beyond a reasonable doubt. The concept of reasonable doubt serves to place at a high level the degree of certainty that must exist in the minds of jurors before they may find a defendant guilty. *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) ("Reasonable doubt" standard serves to "impress[ ] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused."). The standard imposes no obligation whatever upon any juror to explain the juror's thought processes to the other members of the jury. No juror need give *any* reason for entertaining a reasonable doubt about a defendant's guilt, much less the "good" reason required

by the trial judge's instruction to the jury that convicted Chalmers.

The vice of such an instruction is that a juror not persuaded of guilt beyond a reasonable doubt might feel obliged to abandon a vote for acquittal because the juror feels unable to articulate to the other jurors the reason for doubting the defendant's guilt. Though jurors are regularly instructed to listen to each other's views, they are never placed under an obligation to articulate their views to other jurors, or even to formulate for themselves their individual reasons for not being persuaded of guilt. A juror is entitled simply to have a gut feeling that, after consideration of all the evidence, a reasonable doubt remains in the juror's mind. Defining reasonable doubt as a doubt for which some good reason can be given tells jurors that a doubt in their minds is not a reasonable doubt *unless* a good reason can be given. It tells the jurors that having a reasonable doubt is not a sufficient basis on which to vote not guilty; they may vote not guilty only if the doubt in their minds is one for which they can "give[ ]"—that is, articulate—a reason. Furthermore, it tells the jurors not only that they must be able to articulate a reason for their acquittal vote, but also that their reason must be a "good" one. That message lowers the reasonable doubt standard the prosecution is required to satisfy by rejecting the adequacy of a reasonable doubt as a basis for a vote of not guilty and requiring something more.

The Court begins its process of minimizing the significance of the "good reason" instruction by acknowledging that reversible error would have resulted if the trial judge had said that "a reasonable doubt is not enough to acquit the defendant, a good reason is required." 73 F.3d at 1268. Noting that this precise formulation was not said to the jury, the Court then expresses the view that the words that were used did not convey to the jury the very same thought. In my view, however, the message conveyed to the jury was precisely the one set forth in the Court's hypothetical formulation. It is highly likely that every juror comes to a trial with the phrase "reasonable doubt" impressed upon the juror's consciousness. It is a phrase

familiar to every person who has ever read a book about a trial, or seen a play, a movie, or a television program about a trial. When a juror hears the unusual definition "a doubt for which some good reason can be given," it is highly likely that the juror concludes precisely what the Court's hypothetical formulation states—a reasonable doubt alone is not sufficient to acquit; instead, a doubt suffices for acquittal only when a good reason for it can be given.

The Court resists this interpretation of the trial judge's definition by maintaining that "[i]n context, the use of the word 'good' by the trial court was *intended* to mean doubt based on the existence or non-existence of evidence, as opposed to based on conjecture or imagination." 73 F.3d at 1268 (emphasis added). I do not understand what contextual aspect of the jury charge permits that inference of the trial judge's intent, but even if the Court has correctly inferred the intent of the author of the instruction, his intent is not a satisfactory basis for inferring the likely effect of the words spoken upon the listening jurors.

In any event, why are we speculating that the "some good reason can be given" definition was intended by the trial judge to convey a message that reasonable doubt is not a doubt based on conjecture, and why are we further speculating that the jurors likely understood the message as it might have been intended? It is at least as likely (and, in my view, far more likely) that the jurors understood the words to mean precisely what they said—a doubt fails to be a reasonable doubt unless the juror can give a good reason for it.

The Court also maintains that the use of the word "good" to qualify "reason" in the trial judge's definition of reasonable doubt is similar to the jury instruction that the Supreme Court concluded passed constitutional muster in *Victor*. The instruction in *Victor's* trial told the jury that a reasonable doubt is an "actual and substantial doubt." —— U.S. at ——, 114 S.Ct. at 1249. The Supreme Court acknowledged that the adjective "substantial" was "problematic," since it could mean either "not seeming or imaginary," which would be "unexceptional," or "that specified to a large degree," which "would

imply a doubt greater than required for acquittal under *Winship*." *Id.* at ——, 114 S.Ct. at 1250 (internal quotation marks omitted). The Court concluded that, in context, the adjective was "used in the sense of existence rather than magnitude of the doubt," *id.*, since the jury instruction expressly contrasted "substantial doubt" with "a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture." *Id.* at ——, 114 S.Ct. at 1249.

I see little, if any, similarity to our case. In *Victor*, the very sentence containing the "problematic" word made clear that the word was used to mean only that a doubt sufficient to bar conviction must have "existence." But defining the doubt in our case as one "for which some good reason can be given" does not describe the reality of the doubt; instead, the definition describes the articulation the juror is obliged to be able to offer if called upon by fellow jurors to explain what prompts the juror to entertain a doubt that the juror regards as reasonable. It is not a check against conjecture. It is an impermissibly heightened test of the circumstances under which a doubt may be regarded as reasonable. The definition increases the "magnitude" of the doubt that may bar a juror's vote for conviction and thereby lowers the prosecution's burden of proof, precisely the result that the Supreme Court said in *Victor* would violate due process.

II.

As noted, I would rule that the "good reason can be given" instruction constitutes a denial of due process, even in the absence of the five references to "moral certainty" in the prosecutor's summation. These references, however, re-enforce my view that the instruction unconstitutionally lowered the prosecutor's burden of proof. All five references used the bizarre phrase "to the exclusion of a moral certainty." One appeared to link the phrase to a burden upon the defendant by stating "there's no evidence, beyond a reasonable doubt, to the exclusion of any moral certainty, that these four men weren't working together, because they were." The other four references linked the phrase to the prosecutor's burden by stating that the

prosecutor had "proved beyond a reasonable doubt, to the exclusion of a moral certainty" that the defendants were guilty.

The phrase "exclusion of a moral certainty" evidently comes from the prosecutor's compounding of the customary phrase "proof that excludes a reasonable doubt" and the occasionally given, but disapproved, phrase "proof to a moral certainty."[1] The result is not merely confusing, as the majority acknowledges, it is dangerous. Taken literally (as serious arguments like jury summations are usually supposed to be), the prosecutor is telling the jury four times that he has succeeded in excluding a moral certainty, and once that the defendant has failed to exclude a moral certainty. The last reference is especially harmful, for it incorrectly implies that the defendant has a burden and then exacerbates the harm by stating that what the defendant has failed to do is to exclude a moral certainty—something the defendant obviously need not do.

But even the first four references risk harm. Surely the prosecutor was not to be understood as claiming to have excluded what he must prove, *i.e.*, guilt beyond a reasonable doubt. The jurors would not likely think that the prosecutor was arguing how weak his case was. Instead, they would likely think he was arguing its strength, telling them that he thought that what had been *excluded* was the defendant's claim of being innocent to a moral certainty. The fifth reference confirmed this likely understanding by stating it explicitly. When a jury is told that proof of guilt must exclude a reasonable doubt, and then later told that proof of guilt must exclude a moral certainty, the jury is left with the bizarre conclusion that a reasonable doubt is not just a reasonable belief of innocence, but must be a view of innocence held to a moral certainty. Thus, all five references powerfully increased the risk that the trial court's erroneous definition of reasonable doubt left the jury with a seriously flawed understanding of the burden of proof.

If the due process requirement of proving guilt beyond a reasonable doubt is to be maintained as a meaningful requirement of constitutional law, convictions obtained after a jury instruction and a prosecutor's summation such as occurred in this case must not be permitted to stand. I respectfully dissent.

---

**1.** The original understanding of the "moral certainty" phrase, as used in the 19th century, is set forth in *Victor*, —— U.S. at ——–——, 114 S.Ct. at 1245–1248.