Filed 3/28/13  P. v. Hernandez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037587 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1077378) |
| v. | |
| LUCIANO HERNANDEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Luciano Hernandez of 10 counts of lewd act on a child under 14.  (Pen. Code, § 288, subd. (a).)  Defendant committed five counts against victim 1 and five counts against victim 2.  On appeal, defendant contends that (1) the trial court erred by giving the jury a modified instruction in the language of CALCRIM No. 1191 (charged offenses can be considered for propensity) and No. 375 (charged offenses can be considered for intent, motive, lack of mistake), (2) the prosecutor engaged in misconduct during argument about voluntary intoxication, and (3) the trial court erred by failing to instruct the jury sua sponte on the lesser included offenses of battery and attempted lewd act.  We disagree and affirm the judgment.[1]

---

[1] The parties agree that the abstract of judgment incorrectly records the judgment in two respects and we will correct the abstract therefor.

## BACKGROUND

Victim 1 was defendant's stepdaughter; victim 2 was defendant's niece. The incidents in question occurred in the home or in the home of defendant's brother when defendant and his family were living with the brother. They were exposed after victim 1, 12 years old, told her teacher that defendant had been touching her since she was seven years old.

The first incident occurred when victim 1 was seven or eight years old and in second grade; defendant carried victim 1, put her on a bed, pulled down her pants, and rubbed her genital area. A second incident occurred when victim 1 was 10 years old and in fourth grade; defendant put the victim on a bed, pulled down her pants, and touched her genital area with his penis. Other incidents occurred when victim 1 started seventh grade; defendant touched victim 1's genital area through bed sheets three times on different mornings and four times in different evenings. A similar, final incident occurred in a morning when victim 1 was 12 years old.

Defendant admitted to the police that he had grabbed victim 1's genital area about 10 times over the years and once rubbed his penis over the area. He also admitted that, during the prior two months, he hugged, kissed, and grabbed the genital area of victim 2, 13 years old. According to victim 2, defendant touched or rubbed her genital or buttocks area three times in the kitchen and, during three incidents in the bedroom, defendant (1) touched her genital area and tried to kiss her, (2) got on top of her and tried to make her touch his penis while kissing her, and (3) succeeded in having her touch his penis. During a final incident in the bedroom, defendant touched her genital area.

At trial, defendant attacked the victims' credibility by pointing out inconsistencies between their statements and testimony and posing that they had motives to lie. He also relied on his own police interview statements to the effect that he lacked sexual intent as to some of the incidents because he was either intoxicated or joking.

2

## CALCRIM NO. 1191 AND NO. 375

The trial court instructed the jury in the language of CALCRIM No. 1191 as follows: "If you decide the defendant committed one or more of these charged offenses beyond a reasonable doubt, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the defendant was likely to commit and did commit other charged offenses."

Defendant contends that "it violates due process to allow a jury to use such evidence to infer that a defendant had a criminal disposition and therefore committed the other offenses charged in the case." He concedes, however, that the California Supreme Court has rejected this argument in *People v. Villatoro* (2012) 54 Cal.4th 1152, and we are bound by *Villatoro*.

As part of the same instruction, the trial court also instructed in the language of CALCRIM No. 375 as follows: "If you decide that the defendant committed one or more of these charged offenses beyond a reasonable doubt, you may but are not required to consider that evidence for the purpose of deciding whether or not the defendant acted with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or of the child as required. [¶] To prove the offenses alleged in this case or the defendant had a motive to commit offenses charged in this case or the defenses--alleged actions were the result of mistake or accident, if you conclude that the defendant committed one or more of these offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself. [¶] To prove the defendant is guilty of other charged offenses of lewd act upon a child under fourteen, the People must still prove each charge and allegation beyond a reasonable doubt."

Defendant contends that the instruction transgressed due process principles because it lowered the burden of proof. Defendant urges that, "it did not require the jury to use the same degree of scrutiny required for drawing conclusions from other types of

3

circumstantial evidence." According to defendant, the instruction conflicted with the general instruction on circumstantial evidence given by the trial court (CALCRIM No. 224) because it did not tell "the jury that a finding of guilt may not be based on circumstantial evidence unless each fact in the chain of circumstances was proved beyond a reasonable doubt and the proved circumstances were consistent with guilt and cannot be reconciled with any other reasonable conclusion."

"With regard to criminal trials, 'not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is " 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.' " [Citation.] " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " [Citation.] If the charge as a whole is ambiguous, the question is whether there is a " 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." ' (*Middleton v. McNeil* (2004) 541 U.S. 433, 437.)" (*People v. Huggins* (2006) 38 Cal.4th 175, 192.) In this regard, "we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. Mills* (1991) 1 Cal.App.4th 898, 918.)

Defendant's analysis is erroneous. There is no conflict between CALCRIM No. 375 and CALCRIM No. 224 as given by the trial court. Defendant's complaint is that CALCRIM No. 375 is deficient because it did not repeat the concepts stated in CALCRIM No. 224 (circumstances proven beyond a reasonable doubt; circumstances consistent only with guilt). But, read together, the instructions are not ambiguous, inconsistent, or deficient. Defendant makes no argument to the effect that there is a reasonable likelihood that the jury understood that the concepts stated in CALCRIM No. 224 did not apply to the concepts stated in CALCRIM No. 375. The most he offers is that "Jurors unschooled in the law would not necessarily recognize that evidence of charged offenses is a subset of circumstantial evidence unless they had the benefit of

4

some specific instruction educating them on that point." But this view of the jurors is inconsistent with our presumption that jurors are intelligent and capable of understanding and correlating the instructions as a whole.

## PROSECUTORIAL MISCONDUCT

The trial court instructed the jury in the language of CALCRIM No. 3426 as follows: "You may consider evidence, if any, of defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether defendant acted with the specific intent required of the charges. [¶] A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink or substance and knowing that it could produce an intoxicating affect or willfully assuming the risk of that affect in connection with the charges of lewd or lascivious acts on a child under fourteen as charged in counts one to ten. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant acted with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or the child. If the People have not met this burden, you must find the defendant not guilty of lewd or lascivious acts on a child under fourteen. You may not consider evidence of voluntary intoxication for any other purpose."

Thereafter the prosecutor argued the following to the jury.

"Let me just say something about that instruction since it was read. It is basically we heard evidence based on the defendant's statements to the police that he said that he was intoxicated. [¶] He talked about drugs and alcohol, and throughout most of his statement he wanted to blame drug and alcohol for his poor decision making. [¶] There is an instruction that says you get to decide what instructions apply based on the facts that you find, and I submit to you that under the circumstances of this case and the facts, that I am encouraging you to find that instruction has no applicability to the facts of this case. [¶] Essentially that instruction is saying hey, and we will find out if the defense is even going to argue it, but basically it is saying drugs and alcohol were an accomplice in my

5

crime. Drugs and alcohol was like a gun to my head and made me do this. It is not me. I didn't have the specific intent. I didn't have the lewd intent. It was the drugs and alcohol talking. [¶] It was the drugs and alcohol--that it was the drugs and alcohol that made me find the girls at night, and it was the drugs and alcohol that guided my hand to their vaginas. [¶] It was the drugs and alcohol that helped me only touch the girls when nobody else was looking. It was the drugs and alcohol that--[court overrules defendant's objection that prosecutor was misstating the law]. It was the drugs and alcohol--not my interest in--my sexual interest in young girls, but it was the drugs and alcohol that helped me time the touching of the girls when their parents were at work. [¶] We know that he wasn't so intoxicated that, for instance, in the [victim 1] incident when [s]he was in fourth grade he wasn't so intoxicated that he couldn't get his pants down and he couldn't get her pants down, that he couldn't get an erection, that he even ejaculated. [¶] He wasn't so intoxicated that he couldn't do those things because he did all of those things, I think under the facts of this case that instruction doesn't have applicability and that you can comfortably find that was driving him to do what he was doing was his lewd intent and sexual interest in young girls. It wasn't the alcohol. It wasn't the drugs."

Defendant contends that the prosecutor misstated the law by (1) urging that the voluntary intoxication instruction had no applicability to the case, (2) equating voluntary intoxication to an aider and abettor, and (3) implying that voluntary intoxication could not reduce his culpability unless he had no control over his physical actions. According to defendant, "The argument as a whole indicated that evidence of voluntary intoxication should not affect the verdicts unless [he] could show that his intoxication had compelled him to undertake the physical acts of touching [victim 1] or [victim 2]." Defendant's analysis is erroneous.

Misconduct involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Haskett* (1982) 30 Cal.3d 841, 866.) And, of course, it is misconduct for a prosecutor to mischaracterize the evidence (*People*

6

*v. Hill* (1998) 17 Cal.4th 800, 823), misstate the law (*People v. Bell* (1989) 49 Cal.3d 502, 538), or appeal to the passion of the jurors (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1250).

When the claim of misconduct is based on arguments or comments the prosecutor made before a jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 427.)

In examining whether there is a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner, "we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970 disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) "Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the 'statements of advocates.' Thus, argument should 'not be judged as having the same force as an instruction from the court.' " (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1224, fn. 21; *Boyde v. California* (1990) 494 U.S. 370, 384-385.) "This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court. And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made." (*Boyde v. California*, *supra*, at pp. 384-385.) "[W]e cannot focus exclusively on a few erroneous words . . . and then reverse the conviction unless it is 'reasonably likely' that the jury applied the erroneous standard described or implied by those few words. We must examine the overall charge that the jury heard for a better view of the standard the jury took into its deliberations and applied." (*Chalmers v. Mitchell* (2nd Cir. 1996) 73 F.3d 1262, 1267; *United States v. Park* (1975) 421 U.S. 658, 674-675.) The instructions are particularly significant because " '[t]he crucial

7

assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions.' " (*People v. Delgado* (1993) 5 Cal.4th 312, 331.) Thus, "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8; see also *People v. Smith* (2005) 35 Cal.4th 334, 372.)

Here, it is true that the prosecutor urged that the voluntary intoxication instruction was inapplicable. But such a remark cannot reasonably be construed as urging that the jury should ignore the evidence on voluntary intoxication as defendant argues. The prosecutor conceded that evidence of voluntary intoxication existed. And he acknowledged that the point of the evidence was to show that defendant "didn't have the specific intent" and "It was the drugs and alcohol talking." Similarly, the "accomplice" and "guiding my hand" remarks can be construed as building on the specific-intent theme rather than creating issues additional to specific intent for which the intoxication evidence must pass muster.

The prosecutor is given wide latitude to argue broadly the law and facts of a case. (*People v. Lucas* (1995) 12 Cal.4th 415, 473.) The prosecutor may comment on the actual state of the evidence (*People v. Medina* (1995) 11 Cal.4th 694, 755) and may "urge whatever conclusions he deems proper." (*People v. Lewis* (1990) 50 Cal.3d 262, 283.) The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. (*People v. Ward* (2005) 36 Cal.4th 186, 215.) "Their reasoning may be faulty, their deductions from the premises illogical, but this is a matter for the jury ultimately to determine, and not a subject for exception on the part of opposing counsel." (*People v. Willard* (1907) 150 Cal. 543, 552.)

Moreover, in addition to the specific instruction on voluntary intoxication, the trial court advised the jurors in the language of CALCRIM No. 200 that they must accept and

follow the law as stated by the court and "If you believe the attorney's comments on law conflict with my instructions, you must follow my instructions."

In light of the instructions given by the trial court and the argument of the prosecutor that highlighted the purpose of the voluntary intoxication evidence, there is no reasonable likelihood that the jury construed or applied the assailed remarks in an objectionable fashion. Indeed, the circumstances convince us that the supposed misconduct and any potential prejudice are more apparent than real, more arguable on appeal than actual at trial.

## LESSER INCLUDED OFFENSES

Defendant contends that the trial court erred by failing to instruct the jury sua sponte on the lesser included offense of battery.

It is settled that in criminal cases, even in the absence of a request, the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 149.) The general principles of law include instructions on lesser included offenses if there is a question about whether the evidence is sufficient to permit the jury to find all the elements of the charged offense. (*Ibid.*) There is no obligation to instruct the jury on theories that do not have substantial evidentiary support. (*Id.* at p. 162.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Ibid.*) Evidence is substantial if it would permit the jury to conclude the lesser offense was committed, but the greater offense was not. (*Ibid.*)

The parties acknowledge that the intermediate appellate courts are in conflict on whether battery is a lesser included offense of committing a lewd act on a child (Compare *People v. Santos* (1990) 222 Cal.App.3d 723, 739 [battery is not a lesser included offense of lewd act] with *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1291-1293 [battery is

9

a lesser included offense of lewd act]) and the issue is currently before our Supreme Court, which granted review of two recent decisions that reached opposite conclusions. (*People v. Gray* (2011) 199 Cal.App.4th 167, review granted Dec. 14, 2011, S197749 [battery is a lesser included offense of lewd act]; *People v. Shockley* (2010) 190 Cal.App.4th 896, review granted Mar. 16, 2011, S189462 [battery is not a lesser included offense of lewd act].)  Defendant asks us to join those courts which have held that battery is a lesser included offense of lewd conduct.

But we need not address the issue because, if battery were a lesser included offense of a lewd act, the record in this case does not support a battery instruction.

"An offense is necessarily included . . . if the charged offense, either by statutory definition or as described in the accusatory pleading, cannot be committed without also committing the lesser offense."  (*People v. Santos*, *supra*, 222 Cal.App.3d at p. 738.) Penal Code section 288, subdivision (a), states that "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ."  Battery, however, is "any willful and unlawful use of force or violence upon the person of another."  (Pen. Code, § 242.)  Any harmful or offensive touching satisfies the element of unlawful use of force or violence.  (*People v. Pinholster* (1992) 1 Cal.4th 865, 961, overruled on other grounds by *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Defendant argues that "Some of the alleged touchings consisted of fleeting casual contact over the girls' clothes."  He adds that he made statements about his intoxication and "denied being sexually aroused or interested during these momentary touchings." His point is that these facts show that he did not have the specific sexual intent required for a lewd conduct conviction but the jury could have found him guilty of battery.

10

But no objectively nonsexual acts were at issue in this case. Defendant's acts were touching and rubbing the genital area, hugging, kissing, touching his penis, and having his penis touched. It therefore cannot be said that the explicit nature of the contact between defendant and his victims shows that defendant was merely guilty of a harmful or offensive touching. Defendant's explanation that some of the touchings were "just playing" was extremely incredible considering his admissions to the police and implicit concession that some of the touchings were sexual. We do not find that this thin assertion of playfulness constitutes substantial evidence that would have warranted a lesser included battery instruction. (*People v. Valdez* (2004) 32 Cal.4th 73, 116 [there must be evidence a reasonable jury could find persuasive to warrant instruction on lesser offense].)

For similar reasons, we reject defendant's argument that the trial court erred by failing to instruct the jury sua sponte on attempted lewd act as to victim 2.

According to defendant, victim 2 told the police that she had slapped defendant's hand away before he could touch her and defendant told the police that victim 2 would push his hand away when he tried to touch her.

Victim 2 had initially told the police that she "smacked [defendant's] hand away before he touched her private parts." But she later changed that statement after the investigating officer "explained to her that I know it was hard to talk about and that I really needed her to tell me the truth." Victim 2 then related the several specific instances where defendant had touched her in the bedroom. Moreover, defendant told the police that he grabbed victim 2's breasts under her clothes and bit them four or six times and touched victim 2's vagina on top of her underwear four or six times. In addition, he related that he kissed victim 2 and grabbed her buttocks on the evening preceding his police interview. And he expressed gratification to the police that he had never had sexual relations with the victims but admitted that "it could come to something bigger. One begins with touching their hand. Touching the hand and maybe later one begins

11

going inside. . . .  I'm happy because at least I didn't, didn't violate, I didn't penetrate either of them and well that's better."  As to victim 2, he offered "we hugged so often" and "We would kiss each other."  No reasonable jury would credit the vague statements of hand slapping over victim 2's specific statements of sexual contact and defendant's admissions so as to convict defendant of attempted lewd act rather than lewd act.  The lesser offense instruction on attempt was not warranted by the evidence.

ABSTRACT

The trial court sentenced defendant to 45 years to life and issued "an order prohibiting visitation between the defendant and the children victims."  The abstract of judgment, however, states "TOTAL TERM: 46 YEARS TO LIFE" and "No contact and/or visitation with either victim."

## DISPOSITION

The judgment is affirmed.  The abstract of judgment is corrected to read "TOTAL TERM: 45 YEARS TO LIFE" and "No visitation with either victim."

_____
Premo, Acting P.J.

WE CONCUR:

_____
Mihara, J.

_____
Márquez, J.